**UNITED STATES of America, Appellee,**

v.

**Forrest N. GERRY, Jr.,
Defendant, Appellant.**

No. 87–1944.

United States Court of Appeals,
First Circuit.

Heard Feb. 2, 1988.

Decided April 27, 1988.

* Of the District of Rhode Island, sitting by desig-

Thomas Van Houten with whom George F. Wood and Wood & Van Houten, P.A., Sanford, were on brief for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief for appellee.

Before COFFIN and BREYER, Circuit Judges, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

Forrest Gerry, charged with narcotics offenses, moved to suppress evidence of

nation.

methamphetamine manufacturing which was seized from his home pursuant to a search warrant. The application for the warrant contained a reference to a chemical laboratory which police officers, while arresting Gerry at his home on an outstanding warrant, observed during the course of an attendant "security sweep" of the premises. The district court denied the motion, holding that exigent circumstances authorized the officers to conduct a brief and limited search of the premises to ensure that others were not present who would destroy evidence. We affirm.

Since early 1987, special agent Wayne Steadman of the Drug Enforcement Administration had been investigating the possibility of methamphetamine manufacturing in southern Maine. He was not, apparently, without suspects; among them was a man named Richard Ayre, a resident of southern Maine, who Steadman had cause to believe had arranged for the purchase and transportation of various chemicals commonly used to make the drug.

In April of 1987, the FBI informed Steadman that an arrest warrant for Forrest Gerry had been issued for fleeing New Jersey's jurisdiction to avoid prosecution of a charge of conspiracy to manufacture methamphetamine. The FBI advised Steadman that Gerry was living in a house on Route 126 in Pittston, Maine, and was using the name Harvey Bugbee.

Bugbee, apparently, was no stranger to Chief Gordon Glidden of the Gardiner, Maine police. After identifying a photograph of Gerry as the man he knew as Bugbee, Glidden told Steadman that Gerry was from Philadelphia, drove a brown Lincoln, was believed to be fleeing authorities, and was involved with a drug known as "crack," which Steadman testified at the suppression hearing he interpreted as "crank," the street name for methamphetamine. Glidden also told Steadman that Gerry associated with Richard Ayre.

Steadman assembled six state and federal officers and set out to execute the federal arrest warrant and a warrant issued by New Jersey for Gerry's alleged involvement in methamphetamine several years earlier. They discovered that Gerry's house is essentially a trailer, to which is appended a vestibule in front and two rooms in back. Lights were on throughout the house and two cars were parked in the driveway, neither of which was a brown Lincoln. The basement windows were painted black. During a brief surveillance preceding the arrest, officers observed a man named Dill exit the house. He answered several questions and was permitted to leave in one of the cars. The remaining car was known to the officers to be the one usually driven by Richard Ayre.

Two officers entered the vestibule to arrest Gerry. Approximately thirty seconds after Gerry was arrested and, although not handcuffed, under the supervision of two officers, one of the officers heard noises emanating from the rear of the house. He and agent Steadman, suspecting that other persons were on the premises, walked quickly through the trailer, looking in closets, under beds, and in the shower. A third officer noticed that a door in the vestibule was ajar. He opened it, descended steps into what turned out to be a basement, and with the aid of a flashlight made a quick scan of the room. He observed a drum labeled with a chemical name that began with the letters "acetic," a freezer from which tubes extended, filtering apparatus and other glassware. After approximately five to ten seconds, the officer returned to the vestibule.

The sweep through the trailer lasted several minutes. Nothing was disturbed, no drawers were opened, and no area too small to hide a person was examined. The noise that the officer heard turned out to be a chattering Myna bird.

After leaving the house, agent Steadman sought and obtained a search warrant. His supporting affidavit contained a reference to the paraphernalia in the basement. An extensive search was conducted and substantial evidence of methamphetamine manufacturing was seized.

Gerry was indicted for manufacturing a controlled substance in violation of federal narcotics laws. He plead not guilty, and filed a motion to suppress the evidence

seized during the search that police conducted pursuant to the search and seizure warrant. At the suppression hearing, Gerry argued that the sweep through his house following his arrest was an unconstitutional search and that therefore the reference in Steadman's affidavit to the basement paraphernalia must be excised, rendering the affidavit bereft of probable cause to support the warrant.

The district court denied Gerry's motion, holding that exigent circumstances justified the sweep through the trailer. *United States v. Gerry*, 666 F.Supp. 275 (D.Me. 1987). The court found that, considering all of the circumstances, the officers conducting the arrest had "reason to believe that there was a great likelihood that Richard Ayre and/or others on the premises might destroy evidence of [methamphetamine] manufactured on the premises before the officers could obtain a warrant." *Id.* at 277.

Gerry then entered a conditional plea of guilty, reserving the right to have this court review the district court's denial of his suppression motion.

The standard of review of an appeal from a denial of a motion to suppress is that the decision will be upheld if any reasonable view of the evidence supports the trial court's decision. *United States v. Veillette*, 778 F.2d 899, 902 (1st Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

We have held that protective measures to secure the premises until a warrant could be obtained, such as occurred in this case, constitute a search. *Veillette*, 778 F.2d at 902 n. 1. *See also United States v. Hatcher*, 680 F.2d 438, 443 (6th Cir.1982) (a "protective sweep" is "no more lightly taken than any other instance where the government seeks to justify an unwarranted search"). And it is, of course, quite well established that warrantless searches of a home are presumptively invalid. *United States v. Baldacchino*, 762 F.2d 170, 176 (1st Cir.1985). Such intrusions are "constitutionally impermissible unless supported by probable cause and justified by either exigent circumstances or another recog-

nized exception to the Fourth Amendment warrant requirement." *United States v. Cresta*, 825 F.2d 538, 553 (1st Cir.1987). In this circuit, the test for determining whether exigent circumstances justify a warrantless entry "is whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." *Id.* (quoting *United States v. Adams*, 621 F.2d 41, 44 (1st Cir.1980)).

The possibility that evidence will be destroyed by confederates who have discovered the constable is closing in is a well recognized exigency. *United States v. Edwards*, 602 F.2d 458, 468 (1st Cir.1979). We have therefore permitted warrantless intrusions where police reasonably believe that there is a great likelihood that evidence will be destroyed if time is taken to obtain a warrant. *Cresta*, 825 F.2d at 553; *United States v. Moore*, 790 F.2d 13, 15 (1st Cir.1986); *Veillette*, 778 F.2d at 902; *United States v. Palumbo*, 742 F.2d 656, 659 (1st Cir.1984), *cert. denied*, 469 U.S. 1114, 105 S.Ct. 799, 83 L.Ed.2d 792 (1985).

We have cautioned, however, that the destruction of evidence exigency permits the police to conduct only "a very quick and limited pass through the premises to check for third persons who may destroy evidence." *Palumbo*, 742 F.2d at 659 (quoting *United States v. Agapito*, 620 F.2d 324, 337 (2d Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980)). Other circuits permit similar measures. *See, e.g., United States v. Jackson*, 778 F.2d 933, 937 (2d Cir.1985), *cert. denied*, — U.S. ——, 107 S.Ct. 308, 93 L.Ed. 2d 282 (1986); *United States v. Kolodziej*, 706 F.2d 590, 596–97 (5th Cir.1983); *United States v. Hatcher*, 680 F.2d 438, 443–44 (6th Cir.1982); *United States v. Gardner*, 627 F.2d 906, 910 n. 3 (9th Cir.1980).

In this case the officers executing the arrest had reason to believe that there was a methamphetamine laboratory in southern Maine and that Gerry had earlier been charged with manufacturing the drug in New Jersey. They had also been informed by local police that Gerry was suspected of being involved with "crack", or "crank", a street name for methamphetamine. When

they arrived at the house, a car belonging to Richard Ayer, a suspect in their investigation of methamphetamine manufacturing, was parked in the driveway. Numerous lights were on in the first floor and the basement windows were painted black. Once inside, one of the officers heard a television and what he believed to be voices coming from the back of the house. Although the sounds turned out to be the chattering of a Myna bird, they contributed to the officers' already ample suspicion that others were on the premises, had been alerted to the arrest, and posed a threat to evidence of methamphetamine manufacturing.

It has not been suggested that the sweep exceeded the exigency which justified it. It lasted only several minutes and only spaces large enough to conceal a person were examined. The basement door was ajar, suggesting that someone may have recently descended the stairs.

We hold, therefore, that the officer's actions were justified by a reasonable belief that others may have been on the premises who posed a threat to evidence of methamphetamine.[1] The sweep being lawful, anything observed in plain view during its effect, including the basement laboratory, was properly included in the warrant application. *Cf. United States v. Johnston*, 784 F.2d 416, 419 (1st Cir.1986). Accordingly, because Gerry's only challenge to the district court's denial of his suppression motion is the validity of the protective sweep, we see no reason to disturb that court's judgment.

---

1. We emphasize that we are not retreating from the requirement that both probable cause *and* exigent circumstances must exist before a warrantless intrusion is justified. It is true that Agent Steadman testified at the suppression hearing that he did not believe he had sufficient probable cause at the time he conducted the sweep. However, the district court's finding that there was a "great likelihood" that others on the premises might have destroyed evidence implicitly contains a finding that there was in fact probable cause to believe that evidence was on the premises. *See Baldacchino,* 762 F.2d at 176–77. We believe that the district court's finding trumps the conclusory opinion of Agent Steadman.