USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1132 UNITED STATES, Appellee, v. ARNALDO LOPEZ WILSON, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Louis Rivera-Gonzalez, with whom Joseph C. Laws, Jr. was on brief _____________________ ___________________ for appellant. Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom _______________________ Guillermo Gil, United States Attorney, was on brief for appellee. _____________ ____________________ September 29, 1994 ____________________ CAMPBELL, Senior Circuit Judge. Defendant- _______________________ appellant Arnaldo L pez Wilson1 and two others were indicted in the United States District Court for the District of Puerto Rico for having knowingly and willfully possessed with intent to distribute heroin, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2. After the district court denied a motion in limine to suppress evidence, L pez entered a conditional plea of guilty, reserving his right to appeal the court's evidentiary ruling. L pez duly appealed, and we now affirm the district court's denial of the motion to suppress. I. Factual Background __________________ After a hearing on the motion to suppress, the district court found the following facts: On May 15, 1993, agent Wilfredo Gonzalez and another agent of the Puerto Rico Police Department were patrolling the Los Lirios Housing Project in Cupey, Rio Piedras, in an unmarked car. Agent Gonzalez noticed two cars, one closely following the other, that fit a description provided by a reliable confidential informant of cars that had been involved in illegal drug transactions at the project. The agents followed the cars. As they drove, Agent ____________________ 1. In his brief, defendant's name is given as Arnaldo L pez Wilson or L pez-Wilson. We note, however, that in the government's brief, the district court opinion, the plea agreement, and other court documents and police reports, the name appears as Arnaldo Wilson L pez, or Wilson-L pez. -2- 2 Gonzalez heard people shouting "Agua!, agua!" ("Water!, water!"): a signal, according to Agent Gonzalez, used by those involved in drug transactions to advise others of the presence of police. The two cars parked in front of apartment building number fifteen in the project, a building well-known among law enforcement officials as a situs of illegal drug sales, and a total of five individuals hastily exited the cars and walked toward the building. As he watched, Agent Gonzalez saw an object fall from a yellow plastic bag carried by one of the five. As the individuals entered a second-floor apartment in the building, Agent Gonzalez left the patrol car and picked up the object, which he determined to be a package containing controlled substances. Agent Gonzalez called for reinforcements to help with the arrest; in five minutes ten officers arrived, and the police proceeded to the second floor, knocked on the door, and asked the persons inside to step out for identification. As the five individuals exited, Agent Gonzalez, from outside the apartment, saw the yellow plastic bag lying on top of a table within. After all five had exited and no one else remained in the apartment, Agent Gonzalez entered the apartment to retrieve the bag, found it in tatters, looked inside it, and saw that it held several hundred small packages like the one dropped in the street. Again, he determined that the packages held controlled -3- 3 substances. The bag was seized and defendant and others were arrested. The district court found that the Los Lirios Housing Project "is well-known among law enforcement officials as infected with illegal drug dealing activity and as being effectively under the control of well-armed drug organizations who have often shot at law enforcement officials in the past," and that the officers had all feared for their lives while at the project. The court determined that to wait for a warrant authorizing seizure of the bag would have placed the officers in danger forcing them "to re-enter or to remain in the dangerous building after making a visible and unpopular arrest in the project" and would have risked loss or destruction of the evidence at the hands of drug dealers had police left the building. II. Analysis ________ L pez moved to suppress the heroin, arguing that it was the fruit of an unconstitutional search and seizure. The district court upheld the warrantless seizure of the heroin under both the "plain view" and "exigent circumstances" exceptions to the warrant requirement. We review the district court's factual findings only for clear error, but exercise plenary review over the district court's legal -4- 4 conclusions. United States v. Sanchez, 943 F.2d 110, 112 ______________ _______ (1st Cir. 1991). A. Applicable law ______________ L pez argues that the district court erred in failing to apply the standards of the Puerto Rico Constitution to its analysis of the search and seizure. L pez did not raise this issue below.2 However, counsel for one of his codefendants argued, without mentioning the Puerto Rico constitution, that the court must apply "the standards applicable to Police of Puerto Rico officers and not federal officers. Because if not, the Judge would be ____________________ 2. In the introduction to his motion below, L pez argued that the search was "conducted by Puerto Rico Police officers in violation of the Fourth Amendment of the Constitution of the United States and the Supreme Court ruling in Delaware v. ________ Prouse, 440 U.S. 648, 99 S. Ct. 1391 (1979)." ______ In Prouse, the Delaware Supreme Court had held that ______ police use of discretionary "spot checks" of automobiles violated both the federal and state constitutions. Prouse ______ held, among other things, that the U.S. Supreme Court had jurisdiction over the appeal even though the decision was based partly on the state constitution, because it was apparent that the Delaware court's interpretation of the state constitution was affected by its understanding of the federal constitution. Though Prouse's other holdings might also be relevant to ______ the case before us, one might imagine that L pez cited it with the intention of arguing that the Puerto Rico Constitution should be applied in his case (though on this point a citation to Prouse is tangential at best). However, ______ L pez did not thereafter mention Prouse, the Puerto Rico ______ Constitution, or even any Puerto Rico cases in his brief and oral argument before the district court. -5- 5 deputizing or granting federal authority to Police of Puerto Rico officers, which cannot be done under the Constitution." An argument made by one defendant may sometimes suffice to preserve an issue for appeal by a codefendant, United States v. Sanchez-Sotelo, 8 F.3d 202, 210 (5th Cir. _____________ ______________ 1993), cert. denied, 114 S. Ct. 1410 (1994); see, e.g., ____________ ___ ____ Freije v. United States, 386 F.2d 408, 411 n.7 (1st Cir. ______ ______________ 1967). But it seems doubtful to us that the argument now advanced was sufficiently articulated below by anyone to survive on appeal. See United States v. Slade, 980 F.2d 27, ___ _____________ _____ 31 (1st Cir. 1992) ("a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court"). Even, however, if the argument is now open, it is without merit. It is well established that "federal law governs federal prosecutions in federal court." United States v. ______________ Sutherland, 929 F.2d 765, 769 (1st Cir.), cert. denied, 112 __________ ____________ S. Ct. 83 (1991). "'Evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings without regard to state law.'" Id. ____________________________ ___ at 769, quoting United States v. Little, 753 F.2d 1420, 1434 _____________ ______ (9th Cir. 1984) (emphasis in original). This is so even when the evidence is obtained in the course of a state investigation. United States v. Mitro, 880 F.2d 1480, 1485 _____________ _____ n.7 (1st Cir. 1989). Though Sutherland leaves room for the __________ -6- 6 court to exercise its supervisory powers to exclude evidence where federal officials seek to capitalize on an "extreme case of flagrant abuse of the law" by state officials, 929 F.2d at 770, we find no such circumstance here. B. Probable cause ______________ Because the five individuals exited the apartment upon the officer's request and were thereupon arrested outside the apartment, entry into the apartment was not justified as incident to the arrest. See Vale v. Louisiana, ___ ____ _________ 399 U.S. 30, 33-34 (1970) ("If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house") (emphasis in original). To cross the ______ apartment's threshold, Agent Gonzalez needed (1) probable cause to believe that contraband or evidence would be found inside, and (2) exigent circumstances justifying an exception to the warrant requirement, allowing him to enter without first obtaining a warrant. United States v. Moore, 790 F.2d _____________ _____ 13, 15 (1st Cir. 1986). L pez contends that Agent Gonzalez's testimony that a package of heroin fell from the yellow bag was inherently incredible. L pez notes that the dropped evidence was not mentioned in the initial police reports (though it was mentioned in Agent Gonzalez's sworn statement the next day, and corroborated in the sworn statement of a fellow officer, also made the next day), and that the police never identified -7- 7 the carrier of the bag. Had Agent Gonzalez not seen a package of what was found to be heroin fall from the bag, he would not have had probable cause either to believe that there was incriminating evidence in the apartment or to arrest the defendant. (The arrest is not challenged here.) We are bound by the district court's factual findings unless they are clearly erroneous. United States v. _____________ Baldacchino, 762 F.2d 170, 175 (1st Cir. 1985). "[T]he ___________ credibility of witnesses is particularly within the competence of the trial court." Id. L pez argues that, ___ under Puerto Rico case law, a special standard of rigorous scrutiny applies to testimony of dropped evidence, as it may be so easily and conveniently fabricated. However, special standards of Puerto Rico law do not apply in a federal prosecution, supra. The district court's finding that _____ evidence was dropped is amply supported by the evidence and is by no means clearly erroneous. Since the dropped packet contained heroin, and since defendant and his companions carried the yellow bag from which the packet had dropped into the apartment, the agents had probable cause both to arrest defendant and to search the apartment. Defendant, of course cannot object to Agent Gonzalez's viewing of the dropping of the packet and his subsequent examination of the dropped packet, resulting in his finding that it contained heroin. Agent Gonzalez -8- 8 observed this evidence before any intrusion had occurred. "If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause." Illinois v. Andreas, 463 ________ _______ U.S. 765, 771 (1983). Because defendant could have had no reasonable expectation of privacy in the packet dropped and left behind in a public street, Agent Gonzalez's inspection of it was not a search for Fourth Amendment purposes. United ______ States v. Eubanks, 876 F.2d 1514, 1516 (11th Cir. 1989). ______ _______ This incident gave the officers probable cause to believe the yellow bag contained drugs, and since defendant and his accomplices were seen entering the apartment carrying the bag, which was later viewed inside from without, the police had probable cause to seize the yellow bag provided they ________ could lawfully enter the apartment without having a warrant.3 ____________________ 3. Defendant disputes as inherently incredible Gonzalez's testimony that the bag was in plain view in the apartment. Again, we are bound by the district court's factual finding on this issue, which was not clearly erroneous. Moreover, because the officers had probable cause to believe the bag contained drugs and had been left in the apartment, and because we find, below, that the officers' reasonable fear for their safety justified a warrantless search for the bag, it is not critical whether the bag was left in plain view. The officers could have searched for the bag even if it had not been in plain view. See, e.g., Archibald v. Mosel, 677 ___ ____ _________ _____ F.2d 5 (1st Cir. 1982) (search of apartment supportable where exigent circumstances existed and police had reasonable belief that suspect was inside, though he was not ultimately found therein). -9- 9 C. Exigent Circumstances _____________________ In determining whether there is an exigency sufficient to justify a warrantless search and seizure,4 the test is "whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." United States v. Adams, 621 F.2d 41, 44 (1st Cir. _____________ _____ 1980). "The inquiry is necessarily 'fact-based.'" United ______ States v. Donlin, 982 F.2d 31, 34 (1st Cir. 1992). Factors ______ ______ we must consider include the gravity of the underlying offense, whether a delay would pose a threat to police or the public safety, and whether there is a great likelihood that evidence will be destroyed if the search is delayed until a warrant can be obtained. Baldacchino, 762 F.2d at 176. ___________ ____________________ 4. Agent Gonzalez's "plain view" of the yellow bag from outside the apartment did not give him the right to enter the apartment. An officer is not entitled to conduct a warrantless entry and seizure of incriminating evidence simply because he has seen the evidence from outside the premises. "Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure," absent exigent circumstances. Coolidge v. New ________ ___ Hampshire, 403 U.S. 443, 468 (1971). Thus Agent Gonzalez's _________ "plain view" of the bag from outside the apartment would not have justified the seizure unless exigent circumstances existed. This is not a situation to which the so-called "plain view" doctrine applies. That justification to search arises where an officer, already properly on the premises, ________________________________ sees contraband or evidence in plain view that is unrelated to the original justification for entry. See Arizona v. ___ _______ Hicks, 480 U.S. 321, 325-26 (1987). _____ -10- 10 Here, the district court found sufficient exigency in the fact that the housing project, and in particular building fifteen, was known to be "infected with illegal drug dealing activity" and controlled by armed drug-dealers who had shot at law enforcement officers in the past--that it was a "well-armed camp where illegal drug transactions occur every day." Further, the shouts of "Agua!, agua!" and the fact that the arrest was made in public "probably alerted other drug dealers in the building, possibly confederates of the men arrested, to the presence of police officers." To obtain a warrant, the district court found the officers would have had either to risk destruction of the evidence by withdrawing from the scene pending the issuance of a warrant, or risk their own safety by remaining at the building to prevent destruction of the evidence. Neither choice was compelled by the Warrant Clause. "The possibility that evidence will be destroyed by confederates who have discovered the constable is closing in is a well-recognized exigency." United States v. Gerry, 845 ______________ _____ F.2d 34, 36 (1st Cir. 1988). See also Baldacchino, 762 F.2d _________ ___________ at 176-77; United States v. Edwards, 602 F.2d 458 (1st Cir. _____________ _______ 1979). Because, as found, the police activity was publicly observed and occurred in a location controlled by drug dealing organizations, and because the shouts of "Agua!" gave the officers reason to believe that other dealers had been -11- 11 notified of the police presence, the district court could reasonably determine that if the officers withdrew from the building, any evidence would disappear before they returned. We think the court was also entitled to conclude, in light of its other supported findings, that the officers would have placed their safety, as well as the safety of members of the public, at risk had they stayed at the building until a warrant was obtained. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden v. Hayden, 387 U.S. 294, ______ ______ 298-99 (1967). See, e.g., United States v. Lopez, 989 F.2d ___ ____ _____________ _____ 24 (1st Cir.), cert. denied, 114 S. Ct. 201 (1993); Donlin, _____________ ______ 982 F.2d 31; United States v. Irizarry, 673 F.2d 554, 558 _____________ ________ (1st Cir. 1982). The district court found that the building was an "armed camp" controlled by drug dealers who had shot at law officers in the past, and that "by screaming 'Agua!, agua!' members of the drug trafficking community were alerting other members of the community to the presence of law enforcement officers in the area." In such circumstances, the officers could have believed that any attempt to secure the premises pending issuance of a warrant, see, e.g., United States v. Almonte, 952 F.2d 20, 21-22 (1st ___ ____ _____________ _______ Cir. 1991), cert. denied, 112 S. Ct. 1776 (1992); Gerry, 845 ____________ _____ F.2d 34, would have exposed them to the risk of harm. A -12- 12 shooting incident or a struggle in such an atmosphere could have resulted in injury or death to the police or to bystanders. Because withdrawal by the officers would have likely led to the loss of the evidence, while their continued presence would have put their personal safety at risk, the court was entitled to determine, as it did, that the officers were justified by exigent circumstances to seize the plastic bag without first obtaining a warrant. Affirmed. ________ -13- 13