**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeremy WILSON and Joseph Guarino,
Defendants–Appellants.**

Nos. 97–4057, 97–4082.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1998.

Decided Feb. 17, 1999.

Rehearing Denied in No. 97–4082 March 17, 1999.

Jonathan D. King (argued), Office of the U.S. Attorney, Chicago, IL, for U.S.

Robert A. Novelle, Timothy R. Roellig (argued), Serpico, Novelle & Navigato, Chicago, IL, for Joseph Guarino.

Steven Shobat, Timothy R. Roellig (argued), Chicago, IL, for Jeremy Wilson.

Before POSNER, Chief Judge, and RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

After machine guns, firearms, silencers and cocaine were seized from their residence pursuant to a search warrant, Jeremy Wilson and Joseph Guarino entered conditional pleas of guilty to the offenses of illegal possession of those items. Each defendant reserved the right to challenge on appeal the district court's denial of his motion to suppress the evidence resulting from the execution of the warrant. Each defendant also raises a sentencing issue on appeal. For the reasons that follow, we affirm the judgment of the district court in all respects but one: The court's sentencing determination with respect to Mr. Wilson must be reversed and remanded for a recalculation of his sentence.

## I

## BACKGROUND

### A. Facts

Jeremy Wilson and Joseph Guarino both resided in a house in Berwyn, Illinois. On May 2, 1995, Special Agent Ken Howard, a police officer with the Berwyn Police Department who was assigned to the Metropolitan Enforcement Group of Cook County, Illinois, filed a complaint for a search warrant in order to search Mr. Wilson, Mr. Guarino and their residence. The complaint stated that Special Agent Howard, the complainant, had probable cause to believe that in the house were guns, cocaine, items used to manufacture, distribute and possess cocaine, and currency associated with the sale of narcotics.

The probable cause asserted by the officer was based on the statement of confidential informant John Doe that he had known both Mr. Wilson and Mr. Guarino for more than a year and knew that they sold and used cocaine. The informant, a cocaine user himself for two years, stated that he had bought cocaine from them and had used cocaine with them in the past year. On the day before the complaint was filed, May 1, 1995, when the informant was at their residence, he was told that Mr. Guarino and Mr. Wilson had just received a large amount of cocaine. John Doe further related that Mr. Guarino brought up from the basement a large, clear plastic bag that contained smaller packages of the powder cocaine and they used it. He stated that he "received the same feeling from snorting the white powder given to me by Guarino and Wilson as I have from snorting cocaine in the past." Guarino R.25, Ex.2 at 2. Mr. Guarino then returned the large plastic bag containing smaller packages of cocaine to the basement area of the residence, John Doe reported. Based on those facts, complainant Special Agent Howard stated that he believed that Mr. Guarino and Mr. Wilson were in possession of cocaine. Although the complaint recited all of these facts in a first person narrative, the complaint was signed only by Special Agent Howard and not by John Doe.

On the afternoon of May 2, 1995, Agent Howard appeared before Judge Gamberdino in the Cook County Circuit Court. Appearing with Agent Howard was the confidential informant who had supplied the information that formed the basis for the warrant. In the complaint seeking the warrant, in the draft warrant, and in his statements before the judge, Agent Howard referred to the informant as "John Doe" in order to maintain his anonymity. The judge questioned both the informant and the agent under oath, reviewed the complaint for the search warrant and then granted the warrant.

The next day, May 3, Agent Howard, other officers of the Berwyn Police Department, and several agents from the Department of Treasury's Bureau of Alcohol, Tobacco and Firearms ("ATF Agents") executed the warrant and conducted the search of the residence. They seized drugs, a cache of firearms and silencers, and one weapon with an

obliterated serial number. The agents and officers also arrested Mr. Wilson and Mr. Guarino.[1]

Both men were indicted by a federal grand jury. Mr. Guarino was charged in 3 counts with illegal possession of machine guns and firearms (in violation of 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d)) and possession with intent to distribute cocaine (in violation of 21 U.S.C. § 841). Mr. Wilson was charged with 2 counts of illegal possession of firearms, one of which had an obliterated serial number (in violation of 26 U.S.C. § 5861(d)).

## B. Decisions of the District Court

Mr. Guarino filed a motion to suppress the evidence resulting from the search of his residence. Mr. Wilson joined in the motion. The defendants challenged the constitutional validity of the search warrant on the ground that the complaint for the warrant did not comply with the oath or affirmation requirements of the constitutions of the United States and of Illinois because John Doe did not sign the complaint and was not proven reliable.

The government, in response to this motion, attached the sworn affidavits of Judge Gamberdino and Special Agent Howard. These documents described the facts and circumstances concerning the proceedings in the Cook County Circuit Court that led to the issuance of the search warrant. Judge Gamberdino affied that Agent Howard presented the search warrant and complaint for the warrant to the court on May 2, 1995, and that both the officer and the informant appeared as witnesses. He further stated that he was aware that "John Doe" was a pseudonym used to conceal the informant's identity. The judge reported that, even though he could not remember any specific questions he had asked Agent Howard and John Doe, it was his usual and regular practice when reviewing "John Doe" search warrants to question both the informant and the officer under oath. He explained that he "always ask[ed] these questions in order to assess the relia-

bility and credibility of the informant and/or the officer, and to determine their basis of knowledge for the facts alleged in the affidavit." Wilson R.28, Ex.1. The judge also stated that he approved such warrants only after satisfying himself that the witnesses were "reliable and credible, and that the facts alleged in the affidavit and to me personally are sufficient to establish probable cause to issue the warrant." *Id.*

In his affidavit, Special Agent Howard stated that he presented the search warrant and complaint to the court on May 2. His sworn statement also verified Judge Gamberdino's reported procedure of questioning both Agent Howard and John Doe under oath. Although Agent Howard did not remember the actual questions the judge asked, he did recall that the under-oath questioning concerned the witnesses' reliability and credibility and the basis of their knowledge for the facts alleged in the complaint and search warrant.

On November 19, 1996, the district court denied the defendants' motion to suppress. The court determined first that the complaint for the search warrant was "sloppily drafted and [was], by itself, insufficient to support a finding of probable cause," Mem. Op. at 7, because it was written as a first-person statement of John Doe but was signed by Agent Howard. Moreover, noted the court, the complaint did not state specifically that Doe informed Agent Howard of the facts in the complaint or that Agent Howard found Doe's information to be credible and reliable. Nevertheless, the district court stated, because the judge, prior to signing the warrant, reviewed the complaint and heard the sworn testimony of the two witnesses concerning the facts alleged in the warrant, the "oath or affirmation" requirement was satisfied. The court noted in particular that John Doe, by giving sworn testimony, had "subjected himself to the possibility of prosecution for perjury had his testimony proved false" and, by appearing personally before the court, had enabled the judge to assess Doe's credibility

---

1. Agent Howard was assisted in the execution of the search warrant by several ATF Agents. The reports filed by ATF Agents Thomas Murphy, Timothy Wilson and Jeffrey Kosiek and by Spe-

cial Agent Howard listed in detail the evidence seized in various locations of the residence and reported the statements made by Mr. Guarino and Mr. Wilson.

and the reliability of his testimony in the complaint. *Id.* at 6.

The district court then considered Mr. Guarino's claim that Agent Howard had misled Judge Gamberdino by presenting information in the complaint that Agent Howard knew to be false. Mr. Guarino, by affidavit, denied that he had used cocaine with anyone on May 1, 1995, and denied that anyone who could be "John Doe" was in his home on that day. Concluding that Agent Howard fabricated the facts, Mr. Guarino sought a hearing on the issue under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[2] The district court determined that Mr. Guarino's affidavit was merely a "barebones, self-serving denial of the facts set forth by [Agent] Howard" in the complaint for the search warrant. It did not provide the "substantial preliminary showing" needed to justify a *Franks* hearing. *Id.* at 8–9. Therefore, the court concluded, no evidentiary hearing was required.

The district court also denied Mr. Guarino's second motion to quash and suppress.[3] Thereafter, each defendant entered a conditional plea of guilty but reserved the right to appeal the district court's suppression determinations. On November 24, 1997, Mr. Guarino was sentenced to 42 months of imprisonment and Mr. Wilson to 37 months.

## II

## DISCUSSION

### A. Denial of the Suppression Motion

#### 1.

On appeal, the defendants challenge the validity of the search warrant on two grounds. They contend first that the confidential informant's unsigned and unsworn statement in the complaint for the search warrant violated the Oath or Affirmation Clause of the Fourth Amendment. Second, they claim that the informant's reliability was not proven to the court issuing the warrant. Thus, they conclude, the state court erred in relying on the informant's unsworn statement when it found probable cause to issue the warrant. The defendants further contend that, even though the district court correctly recognized that the complaint for the search warrant was insufficient to support a finding of probable cause, it erred in relying on the inadequate affidavits of Judge Gamberdino and Special Agent Howard in satisfaction of the oath or affirmation requirement. According to the defendants, the judge's statement was speculative and ambiguous because he could not remember any questions he asked the two witnesses and because no transcript of the hearing was available. The Special Agent's affidavit was equally insufficient, the defendants contend, because it never vouched for the credibility and reliability of John Doe's evidence and because there was no transcript to prove that the officer appeared before the judge. Finally, the defendants assert that a hearing should be held, with opportunity for full cross-examination, to test the state court judge's memory and his usual and customary practice of questioning complainants under oath.

#### 2.

▮ In this case, our review focuses on a complaint for the search warrant and particularly on the sworn statement of the complainant seeking the search warrant. Whether the oath or affirmation requirement was met is a question of law that we review de novo. In making this assessment, we

---

**2.** In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that a defendant may obtain a hearing to challenge a warrant affidavit if he makes a "substantial preliminary showing" that the affiant has intentionally or recklessly included a false statement in the warrant affidavit and that the false statement was necessary to the probable cause determination. The defendant's showing must be substantial in order to overcome the presumption that a search warrant affidavit is valid. *See id.* at 171, 98 S.Ct. 2674.

**3.** In addition to reaffirming its first ruling on the defendants' suppression motion, the district court ruled that the person named by Mr. Guarino as the "confidential informant" was not the informant. It further determined that Mr. Guarino's "variety of possible entrapment scenarios" does not constitute a "substantial preliminary showing" that a false statement was included by the confidential informant or Agent Howard in the warrant affidavit. The court concluded that an evidentiary hearing was not warranted. *See* Order, Guarino R.49.

keep in mind the words of the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* at 236, 103 S.Ct. 2317 (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (internal quotations omitted)). We must recognize that that judge's task "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir.1995) (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317), *cert. denied*, 517 U.S. 1249, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996).

### 3.

 The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, governs searches and seizures by state officers. *See Ker v. California*, 374 U.S. 23, 30, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by *Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). Although the states retain a great deal of flexibility in the manner in which they conform their law enforcement procedures to the standards of the Fourth Amendment,[4] our jurisprudence makes clear that federal standards apply to the interpretation of the Fourth Amendment. As Justice Black wrote for the Court in *Cooper v. California*, 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), "the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment." *See United States v. Delaporte*, 42 F.3d 1118, 1119 (7th Cir.1994) (holding that defendant in federal drug prosecution was not entitled to suppression of evidence based on violation of state law by state police officers); *Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir.1994) (holding that, in determining whether there has been an unreasonable search and seizure by state officers, a federal court must only look to federal law); *United States v. Singer*, 943 F.2d 758, 761 (7th Cir.1991) (holding that evidence seized by local authorities, whether or not in contravention of state law, is admissible in federal criminal proceeding if it was

---

4. The Supreme Court made it clear in *Ker* that "[t]he States are not ... precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures...." 374 U.S. at 34, 83 S.Ct. 1623 (citation omitted). As the Court explained, "[s]uch a standard implies no derogation of uniformity in applying federal constitutional guarantees but is only a recognition that conditions and circumstances vary just as do investigative and enforcement techniques." *Id.*

State law can also play an ancillary role in Fourth Amendment reasonableness determinations. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (stating in dictum that, in the context of a search incident to an arrest, "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law"); *see also Colorado v. Bertine*, 479 U.S. 367, 371–73, 107 S.Ct. 738, 93

L.Ed.2d 739 (1987) (concluding that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure"); *Illinois v. Lafayette*, 462 U.S. 640, 643–47, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (same); *South Dakota v. Opperman*, 428 U.S. 364, 373, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (same); *cf. Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (holding that, among the factors to be considered in assessing the reasonableness of a search or seizure, the common-law knock-and-announce principle "is an element of the reasonableness inquiry under the Fourth Amendment because there is little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search and seizure").

obtained in a manner consistent with protections afforded by the United States Constitution and federal law); *United States v. D'Antoni*, 874 F.2d 1214, 1218 (7th Cir.1989) (holding that, as long as evidence is admissible under federal law, it is admissible in federal court even if the evidence may not be admissible in state court); *United States v. Mealy*, 851 F.2d 890, 907 (7th Cir.1988) (holding that, in determining whether evidence seized by state officials may be used against a defendant in a federal proceeding, the district court must determine the legality of the search and seizure as if federal officers had executed the search and seizure).[5]

We believe that the procedure followed in this case by the state court complies sufficiently with the oath or affirmation requirement of the Fourth Amendment. No doubt, the preferred practice counsels that the issuing judge require that the informants' statements be reduced to writing and verified. Nevertheless, as a practical matter, the procedure employed in this case gave the judicial officer sufficient opportunity to obtain, under oath, enough information from the informant to satisfy the concerns protected by the oath or affirmation requirement.

The court's interview of the informant under oath allowed the judicial officer to assess the reliability of the informant as well as the reliability of his factual information. In this case, the complaint itself established that John Doe appeared before the court to attest to the facts presented in the complaint. Moreover, the judge who issued the warrant

affied that John Doe appeared and submitted to the court's questions. Under these circumstances, there was sufficient opportunity for the judge to assess the reliability and credibility of the informant.

Our decision in *United States v. Causey*, 9 F.3d 1341 (7th Cir.1993), *cert. denied*, 511 U.S. 1024, 114 S.Ct. 1412, 128 L.Ed.2d 83 (1994), provides helpful guidance. In that case, the warrant was issued upon a complaint signed by the officer and by the confidential informant but pseudonymously. Although the identity of the informant was hidden, both the officer and the informant who provided the information upon which the warrant was based appeared before the issuing judicial officer. Emphasizing that the legality of the search must be determined on the basis of the "circumstances as a whole," *id.* at 1344, we upheld the search. We noted that

> both [the officer who signed the warrant complaint] and the confidential informant personally appeared before the issuing judge. The judge's inquiry of the informant permitted him to assess the informant's credibility and allay any concerns he might have had about the veracity of the informant's statements.

*Id.* (citation omitted); *see also United States v. Lloyd*, 71 F.3d 1256, 1262 (7th Cir.1995) (recognizing that, when an informant "is available to give testimony before the judge issuing the warrant, his presence adds to the reliability of the information used to obtain the warrant"), *cert. denied*, 517 U.S. 1249,

---

5. Other circuits have held similarly. In *United States v. Wilson*, 36 F.3d 205, 208 (1st Cir.1994), after reiterating that federal law governs federal prosecutions in federal court, the First Circuit held that evidence admissible under federal law is admissible in federal court proceedings without regard to state law, even when the evidence is obtained in the course of a state investigation. The Second Circuit has held that evidence that is admissible under federal law will not be suppressed during a federal trial on the basis of a violation of a state exclusionary rule. *See United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987). Furthermore, in *United States v. Rickus*, 737 F.2d 360, 363–64 (3d Cir.1984), the Third Circuit held that evidence obtained in accordance with federal law is admissible in federal court even if the evidence was obtained by state officers in violation of state law. The Fourth Circuit in *United States v. Clutchette*, 24

F.3d 577 (4th Cir.1994), declined to address the question of interplay between state law and the exclusionary rule. However, the court stated that the prevailing view appears to be that violations of state law alone do not compel exclusion of the evidence in federal courts. *See id.* at 581. The Fifth Circuit in *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir.), *cert. denied*, 510 U.S. 890, 114 S.Ct. 246, 126 L.Ed.2d 200 (1993), held that when evidence is secured by state officials and is to be used against a defendant in a federal prosecution, admissibility of the evidence is determined by federal law. *Id.* at 765. The Eighth Circuit has similarly held that evidence obtained in violation of state law is admissible in a federal criminal trial if the evidence was obtained without violating the Constitution or federal law. *See United States v. Padilla–Pena*, 129 F.3d 457, 464 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998).

116 S.Ct. 2511, 135 L.Ed.2d 200 (1996). We agree with the district court that the issuing judicial officer's questioning of both Agent Howard and John Doe under oath prior to signing the search warrant was sufficient to satisfy the constitutional "oath or affirmation" requirement. The informant's appearance in court and his testimony under oath subjected the informant to the possibility of prosecution for perjury, had his testimony proved false, and enabled the judge to assess John Doe's credibility and reliability.

### 4.

■ Finally, we cannot accept the contention that the evidence before the district court did not justify the denial of the motion to suppress. Mr. Guarino contends that we cannot be sure John Doe appeared before the issuing judge because there is no transcript of the proceeding and because the issuing judge, in his affidavit, stated that he could not remember the questions he asked Doe. Judge Gamberdino, however, submitted an affidavit stating that he considered "the under oath statements of both individuals who appeared before" him before signing and dating the warrant. Guarino R.28, Ex.1. He further described his usual and regular practice when reviewing John Doe search warrants. His standard practice was to question the officer and the informant "in order to assess the reliability and credibility of the informant and/or the officer, and to determine their basis of knowledge for the facts alleged in the affidavit." *Id.* He stated as well that he signed the warrant only after satisfying himself that the witnesses were reliable and credible and the facts alleged were sufficient to establish probable cause. Special Agent Howard, in his affidavit, also recalled that the judge's questions concerned the informant's reliability and credibility and the basis of his knowledge of the facts alleged.

■ When there is a judicial proceeding that is under scrutiny, as is the warrant hearing in this case, and there is no transcript of the proceeding, it is not uncommon for a reviewing court to rely on evidence of the regular custom or practice of judicial officers (or of other witnesses) to determine the sufficiency of court procedures or the court's compliance with constitutional standards. *Cf. United States v. Dickerson,* 901 F.2d 579, 583 (7th Cir.1990) (investigating the custom, practice and law applicable to Illinois guilty pleas and, to the extent possible, the particular court's practice to determine whether the plea was an intelligent and voluntary waiver of the defendant's rights). We recognize a strong presumption of regularity in state judicial proceedings. *See United States v. Hoggard,* 61 F.3d 540, 543 (7th Cir.1995) (per curiam) (approving the acceptance of a state trial judge's affidavit concerning his practice of advising defendants at their initial appearance or arraignment). Thus, when there is no record of the state proceeding in question, a "court may accept testimony establishing the 'custom and practice' of the trial court in following proper procedures." *Id.* (citing cases).

■ The district court did not err in receiving the affidavits of the complainant and of the state trial judge who issued the warrant being challenged. Nor did it err in concluding, on the basis of those affidavits, that the witnesses Agent Howard and John Doe had been sworn and questioned in this particular case. Because Mr. Guarino did not establish that Judge Gamberdino would give testimony under oath different from, and contrary to, his sworn statements in his affidavit, the district court properly concluded that a hearing on Judge Gamberdino's probable cause hearing would be unnecessary and inefficient. *See* Guarino R.32 at 7 n. 4.

■ Before this court, Mr. Guarino now suggests for the first time that Judge Gamberdino and Agent Howard ought to have been required to testify at a suppression hearing. Mr. Guarino seeks to question the state judge's and special agent's veracity and memory concerning the procedure employed in applying for the warrant as described in their affidavits. As a threshold matter, we note that arguments raised before this court for the first time are reviewed only for plain error. *See Hoggard,* 61 F.3d at 543. More fundamentally, Mr. Guarino offers no evidence to refute the affidavits. Those affidavits were submitted to the court as evi-

dence of the state court's regular custom or practice when reviewing a complaint for a search warrant; the district court appropriately accepted them for that purpose. Because Mr. Guarino failed to challenge any of the underlying facts or to raise any significant disputed factual issue, the district court did not need to hold a fact-finding hearing. *See United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.) (requiring an evidentiary hearing "only if the party requesting the hearing raises a significant, disputed factual issue"), *cert. denied*, 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990).

In sum, we hold that the district court did not err in denying the defendants' motion to suppress evidence seized in the search of their persons and residence.

## B. Mr. Guarino's Sentencing Challenge

■ After Mr. Guarino entered a plea of guilty, at sentencing he was given a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Mr. Guarino now asserts that receiving that reduction required him to forgo any challenge concerning the upward adjustment given for the drugs found in his home. He claims that he had maintained consistently that he had no involvement in drugs in relation to this case, that the cocaine in his house belonged to someone else, and that his admission of guilt was on the gun charge. Nevertheless, he admits, as he must, that he pled guilty to count 3, possession with intent to distribute cocaine, and that he chose not to go to trial on that drug charge in the face of the overwhelming evidence against him on the gun charge.

At sentencing, the government argued that the § 3E1.1 reduction ought not be granted. It claimed that Mr. Guarino had made two false denials: (1) He denied that he had reason to believe that the firearms in his residence would be used in connection with another felony offense, such as narcotics trafficking, and (2) he denied knowledge of the cocaine found in his residence that was the basis for count 3. The district court stated to Mr. Guarino that, in deciding whether he had accepted responsibility, it would consider whether he truthfully had admitted the conduct comprising the offenses; it explained

that his contesting his possession of cocaine was a denial of that conduct. At that point, Mr. Guarino stated that he would waive his objection. The district court then determined that it would give him the 3-point credit, even though he previously had denied knowledge of the cocaine.

■ A district court's § 3E1.1 determination "is one of fact that depends primarily upon credibility assessments and is reviewed for clear error." *United States v. Whitson*, 125 F.3d 1071, 1075 (7th Cir.1997). The guideline's first application note states that the sentencing court determines whether a defendant qualifies for acceptance of responsibility by considering such factors as whether he is "truthfully admitting the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1, comment. (n. 1(a)) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). A defendant usually does not qualify if he "puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* comment. (n. 2). However, a defendant still may claim the benefit of the acceptance of responsibility reduction, even if he goes to trial, by admitting the factual elements of guilt but challenging the constitutionality of a statute. *Id.*

In this case, at sentencing Mr. Guarino initially denied, rather than admitted, the factual allegations concerning his involvement in drugs. Even though he had pleaded guilty to the count of possession of cocaine with intent to distribute it, he argued that the cocaine was not his. At that point in the proceedings, the district court was confronted with a situation that had some similarities to the situation in *United States v. Rector*, 111 F.3d 503 (7th Cir.1997), in which the defendant's defense was, in effect, "I did it but it was somebody else's fault that I did it." *Id.* at 508. In that case, the defendant admitted the essential elements of guilt from the beginning but proceeded to trial to assert an entrapment defense that did not require him to deny the factual allegations. We up-

held the district court's refusal to grant him a downward adjustment for acceptance of responsibility, both because the defendant demonstrated no remorse and because an entrapment defense "by its nature tends to preclude the acceptance of responsibility." *Id.* at 508.

In our case, Mr. Guarino did not proceed to trial; nevertheless, at sentencing, even while adhering to his plea of guilty, he wanted to deny the essential factual elements of guilt for cocaine possession. When the sentencing court reminded him that a defendant must demonstrate clearly a recognition and affirmative acceptance of personal responsibility for all his criminal conduct, as § 3E1.1(a) requires, Mr. Guarino chose to waive his objections. Mr. Guarino made a conscious decision to forgo his challenge to the factual allegations concerning his involvement in drugs and opted instead for the 3–point reduction. It is clear from the record that the sentencing court did not preclude Mr. Guarino from making a different choice.[6]

### C. Mr. Wilson's Sentencing Challenge

■ Mr. Wilson claims that the court erred in sentencing him at an adjusted offense level of 20.[7] The mistake occurred when the court increased the base offense level by 3 points rather than 2 points for the number of firearms involved. The offense involved 7 firearms and, under § 2K2.1(b)(1)(B), that number of weapons deserves an increase of 2, not 3, levels. Neither the government nor defense counsel noticed the error at the time of sentencing.

The government agrees with Mr. Wilson's position and urges a remand. It notes that, although the actual sentence imposed by the district court, 37 months, is within the guideline range for level 19 (30–37 months), it is at the top of that range. According to the government, because the district court had determined to sentence Mr. Wilson in the mid-range, the case should be remanded to that court so that it can decide in the first instance whether it should choose again to resentence Mr. Wilson in the middle range of level 19 or at another sentence that it determines, in its discretion, is proper.

■ Notwithstanding the government's agreement with Mr. Wilson, we must evaluate independently Mr. Wilson's claim. *See Griffin v. United States,* 109 F.3d 1217, 1219 (7th Cir.1997); *United States v. Locklear,* 97 F.3d 196, 198 (7th Cir.1996).[8] "Confessions of error by the [government] are, of course, entitled to and given great weight, but they do not 'relieve this Court of the performance of the judicial function.'" *Sibron v. New York,* 392 U.S. 40, 58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (quoting *Young v. United States,* 315 U.S. 257, 258, 62 S.Ct. 510, 86 L.Ed. 832 (1942)).[9] Our review of the sen-

---

6. The government has not challenged the award of the § 3E1.1 reduction.

7. The pertinent sentencing guideline applicable to firearms offenses is U.S.S.G. § 2K2.1. The court determined a base offense level of 18 (§ 2K2.1(a)(5)). It then increased the level by 3 levels because there were 7 firearms (§ 2K2.1(b)(1)(B)) and by 2 levels because one weapon had an obliterated serial number (§ 2K2.1(b)(4)). It then gave Mr. Wilson a downward adjustment of 3 levels for his acceptance of responsibility (§ 3E1.1). As a result, the adjusted offense level was 20. The element being challenged is the 3–level increase because there were 7 firearms.

8. Other circuits also hold that the government's change of position or confession of error is not binding on a court of appeals and does not relieve an appellate court of its responsibility to review the asserted error. *See United States v. Cheek,* 94 F.3d 136, 140 (4th Cir.1996); *United States v. Vasquez,* 85 F.3d 59, 60 (2d Cir.1996); *United States v. Stern,* 13 F.3d 489, 496–97 (1st Cir.1994); *United States v. Kepner,* 843 F.2d 755, 763 n. 6 (3d Cir.1988); *Every v. Blackburn,* 781 F.2d 1138, 1140–41 (5th Cir.1986); *United States v. Brainer,* 691 F.2d 691, 693 (4th Cir.1982); *United States v. Gaskins,* 485 F.2d 1046, 1047 (D.C.Cir.1973) (per curiam); *cf. United States v. Bell,* 991 F.2d 1445, 1448 (8th Cir.1993) (stating that, "[i]f a case is to be disposed of based solely upon a confession of error, the court should clearly indicate that it is not announcing a rule of law").

9. In *United States v. Rector,* 111 F.3d 503, 508 (7th Cir.1997), a panel of this court remanded a sentencing matter to the district court with directions to resentence according to the confession of error of the government. The panel indicated that it could not decide whether the confession of error was provident because the government's concession removed the "case or controversy" from the sentencing issue. The panel did not purport to overrule our earlier decisions, *see* Circuit Rule 40(e), nor did it indi-

tencing documents and the guidelines confirms that an error, perhaps a ministerial one but one of clear consequence, was made. We therefore remand Mr. Wilson's case to the district court for resentencing.

### Conclusion

For the foregoing reasons, we reverse and remand Mr. Wilson's sentence to the district court for resentencing, and affirm the judgment of the district court as to all other issues raised in this appeal.

AFFIRMED in part, REVERSED and REMANDED in part

cate why *Sibron* was no longer controlling precedent. We agree with the Fourth Circuit's ruling in *Brainer*, 691 F.2d at 693, that "the government's subsequent change of position neither mooted the case nor otherwise transformed it into something less than a case or controversy." Because we overrule *Rector* insofar as it holds that the government's confession of error moots the issue, we have circulated this case to the entire court as required by Circuit Rule 40(e). No judge favored a rehearing en banc on this issue.