In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3740

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ARMANDO QUINTANILLA,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 97 CR 40075--William L. Beatty, Judge.


SUBMITTED APRIL 4, 2000/*--DECIDED JUNE 26,
2000


   Before COFFEY, ROVNER and DIANE P. WOOD,
Circuit Judges.

   COFFEY, Circuit Judge.  On December 3,
1997, a federal grand jury sitting in the
Southern District of Illinois returned a
one-count indictment charging Armando
Quintanilla with being a felon in
possession of a firearm, in violation of
18 U.S.C. sec. 922(g)(1). After the jury
returned a guilty verdict, the trial
judge sentenced Quintanilla to 87 months'
imprisonment, a fine of $3,500, a $50
special assessment, and three years'
supervised release. On appeal,
Quintanilla argues that the judge
erroneously denied his motion to suppress
the evidence recovered from his home. We
affirm.

I.  BACKGROUND

   Although Quintanilla is appealing
federal gun charges, the genesis of the
investigation of this case occurred in
1995 after the defendant and a man named
John Smith went to the Chicago, Illinois,
area to purchase marijuana on February
17, 1995. According to Smith, when the
two men returned from Chicago to Johnson

City, Illinois, Smith left the marijuana shipment in the trunk of a vehicle parked on his father's property. On February 18, 1995, Smith discovered that the trunk of the car had been pried open and the marijuana had been stolen; Quintanilla suspected that Smith had stolen the narcotics.

When Quintanilla arrived at Smith's father's house, he began yelling, as well as kicking, striking, and pulling Smith's hair. Smith was then blindfolded and taken to another location, tied to the plumbing in a basement, and beaten by Quintanilla and two other men. Smith was kept there overnight and then transported back to Quintanilla's house, tied up, beaten with fire place tools by Quintanilla, and forced to sleep in a bathtub.

On February 21, 1995, Smith was able to escape from Quintanilla's moving vehicle and run to Mabry's Auto Body Garage in Pershing, Illinois. When Franklin County, Illinois, Sheriffs arrived at Mabry's, they found Smith, in a state of near hysteria, with his eyes swollen and discolored, and his forehead and face marked by numerous cuts and bruises. There were also marks, cuts, and bruises on his body.

After investigating the kidnaping, the Sheriff's department obtained an arrest warrant for Quintanilla and his wife, as well as a search warrant for their residence. The warrant for the residence included all outbuildings and vehicles located on the property, and authorized, in part, the search for Smith's blood, fireplace tools used to beat Smith, marijuana, and firearms./1 The complaint included a report of Deputy Don Jones regarding his interview with Smith after he was kidnaped, and also stated that another law enforcement officer knew that the defendant maintained a number of dogs on the premises. Based on the exigencies set out in the complaint, the issuing judge waived the customary knock and announce requirements.

On February 21, 1995, law enforcement officers went to the defendant's residence to execute the arrest and search warrants. As the officers approached the house, Quintanilla and his wife came to the front door to meet them.

As they appeared in the doorway, the couple was advised that they were under arrest.

After the defendant and his wife were arrested, the residence was searched. While Master Sergeant John Lewis of the Illinois State Police was searching an area of the property near the swimming pool, he discovered a .357 magnum revolver wrapped in a plastic bag and hidden inside the cover of the swimming pool./2 Additionally a box of ammunition, including spent rounds, was found in the master bedroom.

On April 28, 1999, the defendant moved to suppress the firearm and plastic bag discovered at his residence on the grounds that the search warrant was: 1) overly broad; and 2) not supported by probable cause. After a hearing, the trial judge denied Quintanilla's motion to suppress, and on May 13, 1999, the jury returned a guilty verdict. As mentioned before, the judge sentenced the defendant to 87 months' imprisonment, to run consecutive to the Illinois state prison term he was (and is) currently serving for the aggravated kidnaping and battery of Smith. Quintanilla appeals.

II.  ISSUES

On appeal, the defendant challenges the denial of his motion to suppress, arguing that the search warrant was unsupported by probable cause. Quintanilla also raises, for the first time on appeal, a challenge to the warrant's "no-knock" authorization. Finally, Quintanilla claims that the government failed to prove beyond a reasonable doubt that he was guilty.

III.  ANALYSIS
A.  Probable Cause

With respect to Quintanilla's claim that the warrant was unsupported by probable cause, we review questions of law de novo and questions of fact for clear error. See Ornelas v. United States, 517 U.S. 690, 698 (1996). We have held that "[b]ecause the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing." United States v. Sholola, 124

F.3d 803, 811 (7th Cir. 1997)./3 Furthermore,

[a] magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999), cert. denied, 120 S. Ct. 967 (2000) (internal quotations and citations omitted). Finally, we must keep in mind that doubtful cases should be resolved in favor of upholding the warrant. See id. (citations omitted).

In this case, the officers had information from a confidential source (CS) which revealed that Quintanilla had firearms and marijuana at his residence. The CS also told police that the guns and narcotics were in close proximity to each other and that the firearms were used to protect the drugs. This CS had given the police reliable information in the past and had provided the above information a week before the warrant was issued. See generally Spry, 190 F.3d at 836; United States v. McNeese, 901 F.2d 585, 596-97 (7th Cir. 1990).

The defendant claims that this information is insufficient to establish probable cause for the issuance of the warrant dealing with the possession of firearms and narcotics on the premises. See United States v. Fairchild, 940 F.2d 261, 264-65 (7th Cir. 1991). However, for obvious reasons, Quintanilla ignores the other information presented to the magistrate judge.

In addition to the facts described above, the police also provided the magistrate with the three-page report of Captain Don Jones concerning the kidnaping and beating of Smith by Quintanilla. As described previously, the report detailed the circumstances surrounding Smith's abduction and severe beatings at the hands of Quintanilla because the defendant suspected that Smith had stolen marijuana from him.

Additionally, the request for the warrant included a picture of Smith, battered and bruised, after the arduous ordeal he was subjected to by Quintanilla. The report also noted that Smith's father and Smith's father's girlfriend witnessed the initial attack and kidnaping of Smith by Quintanilla, thereby providing additional support for Smith's version of events.

Given the totality of the information contained in the record, we are convinced that the magistrate's authorization to search for marijuana and firearms was proper. See Illinois v. Gates, 462 U.S. 213, 238 (1983);/4 see also United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir. 1996); United States v. Henry, 933 F.2d 553, 557 (7th Cir. 1991). Quintanilla's arguments to the contrary are without merit.

B.  No-Knock Provision

Because Quintanilla failed to raise the issue of the "no-knock" provision in his motion to suppress, we review his claim that the inclusion of such a provision in the warrant violated his constitutional rights for "cause." See United States v. Evans, 131 F.3d 1192, 1193 (7th Cir. 1997); see also United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997), cert. denied, 119 S. Ct. 1588 (1999); United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993); Doganiere v. United States, 914 F.2d 165, 167 (9th Cir. 1990). And we have held that "'[c]ause' is a more stringent standard than the plain error standard . . . ." Evans, 131 F.3d at 1193.

Although it is the appellant's burden to establish "cause" for his failure to raise the no-knock issue in a motion to suppress, Quintanilla's brief fails to even suggest a reason for the failure. Instead, the appellant's brief is devoted to the applicability of two Illinois Supreme Court cases, People v. Krueger, 675 N.E.2d 604 (Ill. 1996) and People v. Wright, 697 N.E.2d 693 (Ill. 1998), to the "no-knock" provision in the warrant.

As we stated in United States v. Gambrell, 178 F.3d 927, 928 (7th Cir.), cert. denied, 120 S. Ct. 281 (1999), neither of the two cases the appellant relies upon "has any practical effect on our decision today." Instead, it is

axiomatic that "federal standards control the admissibility of evidence in a federal prosecution even though the evidence was seized by state officials and would not be admissible in state court." United States v. Singer, 943 F.2d 758, 761 (7th Cir. 1991). It is also clear that "no-knock" entries are permissible under federal law. See Richards v. Wisconsin, 520 U.S. 385, 394 (1997).

Furthermore, the testimony in this case reveals that the officers were not required to use the "no-knock" authorization. Instead, both Quintanilla and his wife approached the front door of their residence as the officers first encroached upon the defendant's property. The officers had a short discussion with the couple, informed them that they were under arrest, and even made arrangements for a neighbor to take care of their child. It was only after this that the officers entered the residence and executed the search warrant. Given the circumstances surrounding the actual entry into the defendant's home, Quintanilla has failed to establish any possible prejudice from the inclusion of authorization for a no-knock entry in the warrant.

We are convinced that Quintanilla has failed to establish cause for his failure to raise the authorization for a no-knock entry in a motion to suppress. Additionally, the arguments he does raise have previously been expressly rejected by this court. Accordingly, we need not address this issue any further.

C.  Sufficiency of the Evidence

Quintanilla also claims that the evidence adduced at trial was insufficient to convict him of being a felon in possession of a firearm. However, we have long noted that a defendant attempting to overturn a conviction on grounds of the sufficiency of the evidence "faces a heavy burden." United States v. Hopson, 184 F.3d 634, 636 (7th Cir. 1999), cert. denied, 120 S. Ct. 828 (2000). A conviction will be upheld if the evidence, when viewed in the light most favorable to the government, establishes that "any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

In order to secure a conviction under section 922(g)(1), the government must prove beyond a reasonable doubt that: 1) the defendant had a previous felony conviction; 2) the defendant was in possession of a firearm; and 3) the firearm had traveled in or affected interstate commerce. See United States v. Woolfolk, 197 F.3d 900, 903 (7th Cir. 1999), cert. denied, 120 S. Ct. 1705 (2000) (citing United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir. 1990) and United States v. Petitjean, 883 F.2d 1341, 1347 (7th Cir. 1989)). In this case, the appellant concedes that both the previous conviction and the interstate commerce elements cited above were established. Thus, the only issue before this court is whether the government adequately proved the element of possession.

The government not only introduced the .357 magnum seized from the defendant's house at trial, but expert testimony also established that Quintanilla's fingerprints were found on the gun as well as on the plastic bag containing the gun. Although this evidence would have been sufficient to establish the defendant's guilt, especially when viewed in the light most favorable to the government, the government also introduced the testimony of James Johnson.

Johnson testified that in early 1994 he gave the .357 magnum handgun and a box and a half of ammunition for the gun to Quintanilla's wife, Lisa. Johnson further testified that when he gave the weapon to Lisa, Quintanilla admired the gun and the two men decided to go out in the woods behind Quintanilla's house and fire the weapon. According to Johnson's testimony, he loaded the weapon and the two men each proceeded to fire the weapon three times. It was this gun that the police found at Quintanilla's residence with his fingerprints on it, as well as on the plastic bag containing the gun. The police also discovered the box and a half of ammunition Johnson had previously given to the defendant, including the spent cartridges.

We are of the opinion that, when viewed

in the light most favorable to the government, there is sufficient evidence to allow a jury to reasonably conclude that Quintanilla was a felon in possession of a firearm.

   The decision of the district court is AFFIRMED.

*/  At oral argument, the parties agreed to submit the case on the briefs. See Fed. R. App. P. 34(f).

/1 The complaint for the search warrant recited, in part, that:

A confidential source of the Southern Illinois Drug Task Force advised John Moore that Armando Quintanilla has firearms concealed in the residence to be searched. Said conversation took place in Benton, IL last Monday (Feb. 13, 1995). The source has given said Moore accurate information in the past. The source related that Quintanilla had the firearms for protection and had the firearms in close proximity to marijuana in the residence.

/2 Quintanilla's fingerprints were found on the handgun and the plastic bag.

/3 The Supreme Court has, to date, not defined the legal phrase probable cause, saying that whether it has been established varies with the facts of each case. See Ornelas, 517 U.S. at 696. Instead, the Court has adopted a "totality of the circumstances" standard. See Illinois v. Gates, 462 U.S. 213, 230-39 (1983).

/4 As the Supreme Court stated in Illinois v. Gates, 462 U.S. at 231-32:

Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception." Brinegar v. United States, 338 U.S. 160, 176, . . . (1949). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., at 175 . . . . Our observation in United States v. Cortez, 449 U.S. 411, 418 . . . (1981), regarding "particularized suspicion," is also applicable to the probable cause standard:

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclu-

sions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.