**UNITED STATES of America**

v.

**William A. HANHARDT; Joseph N. Basinski; Paul J. Schiro, Sam Destefano, Guy Altobello and William R. Brown, Defendants.**

### No. 00 CR 0853.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 23, 2001.

**OPINION AND ORDER**

John J. Scully, John F. Podliska, U.S. Atty's Office, Chicago, IL, for U.S.

Thomas P. Sullivan, Jenner & Block, Chicago, IL, for William A. Hanhardt.

Andrew Theodore Staes, Jeffrey Neal Cole, John T. Theis, Law Office of John T. Theis, Chicago, IL, for Joseph N. Basinski.

Paul Augustus Wagner, Attorney at Law, Chicago, IL, for Paul J. Schiro.

James John Cutrone, James J. Cutrone, Attorney at Law, Santo John Volpe, Attorney at Law, Chicago, IL, for Sam Destefano.

Raymond D. Pijon, Attorney at Law, Chicago, IL, for Guy Altobello.

NORGLE, District Judge.

Before the court are Defendants' motions to suppress evidence obtained from intercepts authorized under Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 et seq ("Title III"). For the following reasons, the motions are denied.

## I. BACKGROUND

This marks the sixth time the court has written an opinion in this case.[1] The case arises from an alleged organized crime conspiracy to commit jewelry thefts across the nation. As part of the Government's investigation, on January 2, 1996, it submitted a Title III application to Chief Judge Aspen for authorization to intercept wire and oral communications on the home telephone number of Defendant William Hanhardt.

The Government's original application was accompanied by an affidavit from F.B.I. Special Agent McNamara, and supporting exhibits.[2] Agent McNamara's January 2, 1996 affidavit was organized into the following sections: (1) general background information on Agent McNamara, the investigation, and persons targeted in the investigation (*see* McNamara Affidavit of Jan. 2, 1996, pp. 1–7); (2)

---

1. *See United States v. Hanhardt,* 156 F.Supp.2d 988 (N.D.Ill.2001) (slip op.); *United States v. Hanhardt,* 155 F.Supp.2d 861 (N.D.Ill.2001) (denying motion to continue); *United States v. Hanhardt,* 151 F.Supp.2d 971 (N.D.Ill.2001) (denying motion to sever); *United States v. Hanhardt,* 155 F.Supp.2d 840 (N.D.Ill.2001) (denying motion to suppress); *United States v. Hanhardt,* 134 F.Supp.2d 972 (N.D.Ill.2001) (denying motion to recuse).

2. The court's resolution of these motions necessarily entails a detailed analysis of the materials submitted in support of the original Title III authorization, particularly the affidavit of Agent McNamara. Portions of this case file are under seal, including Agent McNamara's affidavit. An intervening party has moved the court to unseal the file, and that issue is under advisement. For the present, the court must articulate its reasoning while taking care to keep from exposing matters that are under seal. *See Pepsico, Inc. v. Redmond,* 46 F.3d 29, 30–31 (7th Cir.1995) (in a different context noting that the court's opinions "belong to the public, which underwrites the judicial system that produces them.").

information from five named informants and seven confidential informants that provided both historical background and current facts (*see id.* at pp. 7–37); (3) analysis of telephone calls billed to a calling card identified by one of the confidential informants as being used to facilitate jewelry thefts (*id.* at pp. 37–62); (4) telephone records of the targeted phone number (*id.* at pp. 62–65); (5) telephone records of the phone number assigned to the Arizona home of Defendant Joseph Basinski (*id.* at pp. 65–66); (6) analysis of calls made to Hanhardt's pager (*id.* at pp. 67–68); (7) pen register information from the targeted phone number (*id.* at pp. 68–70); (8) subpoenaed records from a telephone at a federal correctional institution to the targeted phone number (*id.* at pp. 71–72); (9) information from the F.B.I.'s so-called "strawman" investigation (*id.* at pp. 72–73); (10) information from the F.B.I.'s so-called "Pendorf" investigation (*id.* at pp. 73–74); (11) information concerning alternative investigative techniques (*id.* at pp. 74–78); (12) statements of intent to minimize interception of innocent calls (*id.* at pp. 78–79); and (13) the request for the authorization (*id.* at pg. 80).

Chief Judge Aspen granted the Government's application. Thereafter, the Government submitted periodic reports of intercepts from the targeted phone number. Based on information learned from the intercepts, the Government sought eleven extensions of the authorization on the targeted phone number, and sought intercept authorizations on several additional telephones and a skypager. Defendants now move, collectively and individually, to suppress evidence obtained from the Title III intercepts, whether the evidence was the direct result of the intercepts, or was derivative of the intercepts.

## II. DISCUSSION

Title III outlines the procedure for the Government to intercept oral, wire and electronic communications. In addition to other materials, Title III requires intercept applicants to submit a statement of facts justifying the applicant's belief that the order should be issued, and a statement that other investigative techniques have been tried and failed, or why other techniques reasonably appear unlikely to succeed, or that other techniques are too dangerous. *See* 18 U.S.C. §§ 2518(1)(b) & (c). The intercept authorization may issue upon a determination that the applicant's factual statements demonstrate probable cause to believe that a particular person has committed, is committing, or is about to commit an offense,[3] that there is probable cause to believe that particular communications concerning the offense will be obtained through interception, and that normal investigative techniques have been tried, or reasonably appear unlikely to succeed, or are too dangerous. *See* 18 U.S.C. § 2518(3). Defendants' motions assert that Agent McNamara's original affidavit does not support a finding of probable cause, and that the Government failed to demonstrate that the Title III intercepts were necessary.[4] The court discusses each of these points and the relevant law in greater detail below.

### A. Standing:

As a preliminary matter, the Government argues that Defendants do not ade-

---

3. 18 U.S.C. § 2518 references offenses enumerated in § 2516, which provides a long list of crimes that may be subject to Title III intercepts.

4. Defendants do not raise minimization of the intercepts as a basis for suppression. The Government's response provides substantive argument on minimization, and also asserts that Defendants have waived the argument. Because Defendants present neither evidence · nor argument on minimization, the court does not reach the issue.

quately address their standing to suppress the Title III intercepts. Title III allows "aggrieved persons" to move to suppress the contents of any intercepted wire or oral communication, and evidence derived therefrom. 18 U.S.C. § 2518(10). An aggrieved person is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11); *see also Alderman v. United States*, 394 U.S. 165, 171–80, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (discussing standing to move to suppress Title III intercepts); *United States v. Dorfman*, 690 F.2d 1217, 1226–29 (7th Cir. 1982) (same). The Government argues that Defendants cannot assert a general motion to suppress all of the intercepts without demonstrating how each Defendant is an aggrieved person, and that Defendants have the burden of identifying themselves as aggrieved persons to particular intercepts. Without discounting this general principle, the court declines to address the issue, because, as discussed in detail below, Defendants fail to persuade the court to suppress the intercepts, regardless of individual Defendants' standing on particular intercepts.

## B. Probable Cause:

Defendants' first argument is that Chief Judge Aspen's issuance of the Title III authorization was erroneous because the materials submitted in support of the authorization do not support a finding of probable cause. The court rejects the argument, as the materials submitted to Chief Judge Aspen provided an ample basis on which to find probable cause.

### 1. Standard of Review:

■ The parties agree that the court should review Chief Judge Aspen's issuance of the Title III intercept authorization under the standards announced in *Illinois v. Gates*, 462 U.S. 213, 235–36, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and its progeny. *Gates* is deferential to probable cause determinations, and holds that an initial finding of probable cause should stand if there was a substantial basis for the finding, whether it be to authorize a Title III intercept or a search or arrest warrant. *See id.* (holding that a finding of probable cause to issue a search warrant will stand if there was a substantial basis on which to find probable cause); *see also United States v. Fairchild*, 189 F.3d 769, 775 (8th Cir.1999) (noting that the statutory probable cause standards of Title III are co-extensive with the constitutional requirements of probable cause under the Fourth Amendment).

Since *Gates*, the Supreme Court has addressed the issue of standard of review of probable cause to support warrantless searches. *See Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 1659–63, 134 L.Ed.2d 911 (1996). In *Ornelas*, the Supreme Court discussed a distinction between a situation where a warrant has issued, and one in which a warrant has not issued. *Id.* at 1663. The Court noted that retaining a deferential review of probable cause in warrant situations furthers the Fourth Amendment's preference for warrants. *Id.* The Court then went on to say:

> We therefore hold that as a general matter determinations of ... probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

*Id.*

The Seventh Circuit has applied *Ornelas'* de novo review of probable cause with deference to factual findings to appellate review of a magistrate's issuance of a war-

rant. *See United States v. Quintanilla,* 218 F.3d 674, 677 (7th Cir.2000). The Seventh Circuit described the standard of review as follows:

[W]e review questions of law de novo and questions of fact for clear error.... We have held that because the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing.... Furthermore, a magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.... Furthermore, we must keep in mind that doubtful cases should be resolved in favor of upholding the warrant....

*Id.* (internal quotations, citations, and brackets omitted); *see also United States v. Cunningham,* 113 F.3d 289, 291 (1st Cir.1997) (applying a de novo review to questions of law and a clearly erroneous standard to questions of fact in review of motion to suppress evidence obtained pursuant to a state court authorized wiretap); *but see United States v. Gotti,* 42 F.Supp.2d 252, 262 (S.D.N.Y.1999) (rejecting a de novo standard, and reviewing a Title III probable cause determination under the substantial basis standard announced in *Gates* ).

■ Therefore, despite the parties' agreement that *Gates* controls, the court will apply a de novo review of Chief Judge Aspen's finding of probable cause, while giving deference to factual findings and the inferences drawn by Chief Judge As-

pen and the investigating officers. *See Ornelas,* 116 S.Ct. at 1663. A Title III intercept authorization is similar to an application for a warrant, and should be reviewed under the same standards. *See Fairchild,* 189 F.3d at 775; *United States v. Leisure,* 844 F.2d 1347, 1354 (8th Cir. 1988). And relying on *Ornelas,* recent Seventh Circuit precedent is that a probable cause determination is reviewed de novo, while giving deference to questions of fact and inferences drawn therefrom. *See e.g. United States v. Childs,* 256 F.3d 559, 562 (7th Cir.2001); *United States v. Mounts,* 248 F.3d 712, 714–15 (7th Cir. 2001); *Quintanilla,* 218 F.3d at 677; *United States v. Moore,* 215 F.3d 681, 684 (7th Cir.2000), *cert. denied,* 531 U.S. 915, 121 S.Ct. 271, 148 L.Ed.2d 197 (2000); *United States v. Spry,* 190 F.3d 829, 835 (7th Cir.1999), *cert. denied,* 528 U.S. 1130, 120 S.Ct. 967, 145 L.Ed.2d 838 (2000); *United States v. Scheets,* 188 F.3d 829, 835–36 (7th Cir.1999), *cert. denied,* 528 U.S. 1096, 120 S.Ct. 837, 145 L.Ed.2d 703 (2000); *United States v. McKinney,* 143 F.3d 325, 328 (7th Cir.1998); *but see United States v. Walker,* 237 F.3d 845, 849–50 (7th Cir.2001) (reviewing the denial of a motion to suppress evidence obtained pursuant to a search warrant under the standards announced in *Gates* ). In any case, if Chief Judge Aspen's probable cause determination passes a de novo review, it necessarily survives a more deferential review. *Cf. United States v. Wells,* No. IP–99–140–CR–B/F, 2000 WL 1231722, *3 & n. 3 (S.D.Ind. Aug.29, 2000) (discussing the standard of review applied to Title III probable cause determinations, and expressing concern that the review should be deferential rather than de novo).

## 2. Probable Cause Determination: [5]

■ The statutory probable cause standards of Title III are co-extensive with

---

5. The Government submits an alternative argument that, if the Title III authorization was

the constitutional requirements of probable cause under the Fourth Amendment. *See Fairchild,* 189 F.3d at 775; *Leisure,* 844 F.2d at 1354. Thus, the court reviews probable cause for a Title III authorization in the same manner as it reviews probable cause to support a search or arrest warrant. *Fairchild,* 189 F.3d at 775; *Leisure,* 844 F.2d at 1354.

■ There is no precise test for determining probable cause. *United States v. McClinton,* 135 F.3d 1178, 1183 (7th Cir.1998); *see also Quintanilla,* 218 F.3d at 674 n. 3 (noting that the Supreme Court has not defined the legal phrase probable cause); *Spiegel v. Cortese,* 196 F.3d 717, 724 n. 1 (7th Cir.1999) (probable cause is a fluid concept) (citing *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)), *cert. denied,* 530 U.S. 1243, 120 S.Ct. 2688, 147 L.Ed.2d 961 (2000). Probable cause depends on the totality of the facts and circumstances at hand, and will be found where an officer has reasonably trustworthy information sufficient to justify a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *See United States v. Sawyer,* 224 F.3d 675, 678–79 (7th Cir.2000). "Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (citing *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir. 1992)). Indeed, probable cause is *less* than a more likely than not test, "but how much less will depend on the circumstances ... including the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Spiegel,* 196 F.3d at 724 n. 1

(emphasis added, quoting *Gramenos v. Jewel Cos.,* 797 F.2d 432, 438 (7th Cir. 1986) and *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). When probable cause is to be determined from an affidavit, the court is not to engage in a hypertechnical reading of the affidavit. *United States v. Wilson,* 169 F.3d 418, 422–23 (7th Cir.1999). Instead, the court is to evaluate the totality of the information found in the affidavit, and "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *United States v. Lloyd,* 71 F.3d 1256, 1263 (7th Cir.1995)).

Defendants attack Chief Judge Aspen's probable cause determination on several fronts. First, Defendants argue that assuming the truth of everything contained in Agent McNamara's affidavit, it is facially deficient and does not support a finding of probable cause to issue the Title III intercept authorization. Next, Defendants assert that the information from the named and confidential informants is not reliable because it is hearsay, the informants' credibility is belied by their criminal histories, and the informants may have been induced by threats or rewards into providing untruthful information. Finally, Defendants argue that, if the court does not suppress the evidence, a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), is required to determine whether Agent McNamara's affidavit contains material

erroneously issued, the court should conduct a good faith analysis pursuant to *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The court does not reach this issue because it finds that the authorization was proper, and was supported by probable cause.

false information. The court addresses each of Defendants' argument in turn.

### a. McNamara's affidavit is facially sufficient:

■ Guided by the above principles, the court finds that Agent McNamara's affidavit demonstrates probable cause to issue the Title III authorization.[6] While bearing in mind that the affidavit is under seal, the relevant information concerning probable cause consisted of: (1) general background about organized crime in Chicago, and organized crime strategies involving jewelry thefts (*see* McNamara Affidavit of Jan. 2, 1996, pp. 6–7); (2) information from named and confidential informants who provided both historical and current information about organized crime in Chicago, and alleged connections between Hanhardt and Basinski (*see id.* at pp. 7–37); (3) analysis of activity on a telephone card that was identified by an informant as being used by Hanhardt and Basinski to communicate concerning alleged thefts, which revealed that the card was used to call Hanhardt's home number (the phone number targeted in the Title III intercept authorization application), Basinski's home number in Arizona, and the phones of persons associated with organized crime in Chicago, including persons thought to be involved in jewelry thefts (*see id.* at pp. 37–62); (4) analysis of phone records of Hanhardt's home phone, which showed that between December 28, 1994 and May 28, 1995, Hanhardt's home phone had made multiple calls to Basinski's home in Arizona and to other persons associated with organized crime in Chicago (*see id.* at pp. 62–65); (5) analysis of telephone records of Basinski's phone in his home in Arizona, which showed numerous calls between Basinski's Arizona phone and Hanhardt's home, Hanhardt's pager, and calls to persons that have connections to organized crime in Chicago (*id.* at pp. 65–66); (6) analysis of calls made to Hanhardt's pager during periods in August of 1995 and November of 1995, which demonstrated that during those time periods, Hanhardt received some calls from Basinski and other persons connected to organized crime in Chicago (*see id.* at pp. 67–68); (7) pen register analysis of Hanhardt's home phone number, which showed that between October 16, 1995 through December 15, 1995, there were numerous calls between Hanhardt's home phone and Basinski's phone in Arizona, multiple calls between Hanhardt's home phone and phone numbers assigned to persons connected to organized crime in Chicago, and numerous calls between Hanhardt's home phone and various numbers of the Chicago Police Department (*see id.* at pp. 68–70); (8) records of calls made in June of 1995 from a telephone at a federal correctional institution to Hanhardt's home phone number, in which Hanhardt made reference to several persons connected with organized crime in Chicago (*see id.* at pp. 71–72);[7] (9) statements that in 1979 Hanhardt had leaked information of the F.B.I.'s "strawman" investigation into organized crime in Las Vegas to persons targeted in the investigation (*see id.* at pp. 72–73); and (10) statements that Hanhardt's name surfaced during the F.B.I.'s "Pendorf" investigation in the late 1970's in the context of traffic tickets. (*see id.* at pp. 73–74).

This information is more than facially sufficient to find probable cause that certain Defendants were using the targeted

---

6. This is not the first occasion that the court has analyzed Agent McNamara's affidavit. On June 25, 2001, the court denied Defendants' motion for additional discovery. In the context of that denial, the court reviewed the affidavit, but did not decide the issue of probable cause.

7. The record does not reflect that the calls from the federal correctional institution were intercepted under Title III.

phone number as part of a conspiracy to deal in stolen goods. Of particular note are the numerous telephone records and pen register information that showed a large number of phone calls between Hanhardt's home phone and the phones of persons known to be associated with organized crime. Defendants argue that the phone records and pen register information do not establish probable cause because those records only show that calls were made. They further assert that the records do not reveal who was talking to whom, what was being said, or if the calls were even answered. The argument is not persuasive.

■■■■ Together with the other information in the affidavit, the telephone records and pen register information is more than sufficient to demonstrate probable cause. Indeed, such phone records and pen register information often raise an inference of criminal activity that supports authorization of a Title III intercept order. Such is the law in the Seventh Circuit and elsewhere. *See e.g. Fairchild,* 189 F.3d at 776 (pen register information combined with other evidence demonstrated probable cause); *United States v. Diaz,* 176 F.3d 52, 110 (2nd Cir.1999) (pen register information is part of the totality of the circumstances that is probable cause), *cert. denied,* 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999); *United States v. Milton,* 153 F.3d 891, 894–95 (8th Cir.1998) (same); *United States v. Wagner,* 989 F.2d 69, 74 (2nd Cir.1993) (same); *United States v. Butz,* 982 F.2d 1378, 1382 (9th Cir.1993) (pen register information helped establish probable cause to authorize Title III intercept order); *United States v. Danovaro,* 877 F.2d 583, 585 (7th Cir.1989) (affirming the issuance of a Title III intercept authorization based in part on pen register information); *United States v. Gonzales,* 866 F.2d 781, 787 (5th Cir.1989) (pen registers contributed to probable cause determination); *United States v. La-*

*mantia,* No. 93 CR 523, 1996 WL 559950, *5 (N.D.Ill. Sep.30, 1996) (noting that "[p]en registers are a widely accepted method of establishing probable cause for electronic surveillance of telephones."); *United States v. Carlisi,* No. 92 CR 1064, 1993 WL 339079, *24 (N.D.Ill. Aug.30, 1993) (finding that pen register information was sufficient to find probable cause for a Title III intercept); *United States v. Infelise,* No. 90 CR 87, 1991 WL 255628, * 2, 4, 5 (N.D.Ill. Oct.18, 1991) (finding that pen register information combined with other evidence was sufficient to find probable cause to authorize Title III intercepts). As these authorities make clear, probable cause may be found in evidence that phone calls are made between persons thought to be engaged in criminal activity, without knowing what was said by whom during the conversation. The simple fact of calls being made can be enough to demonstrate probable cause. In this case, the pen register information and other telephone records, combined with the other information in the affidavit, demonstrates probable cause to authorize the Title III intercept on Hanhardt's home telephone.

Also notable are the inferences from the named and confidential informants that Hanhardt had a long time connection to, or relationship with, organized crime figures in Chicago, and that Hanhardt and Basinski were actively engaged in planning and carrying out jewelry thefts. This information is both historical and current, and is sufficient by itself to support an inference that Hanhardt and Basinski had committed, were committing, or were planning to commit a crime in furtherance of an organized jewelry theft conspiracy.

**b. Reliability of the named and confidential informants:**

■■■ Defendants attack the reliability of the information from the named and

confidential informants, and assert that a lack of reliability places probable cause in doubt. Defendants claim that: (1) the informants' statements contain hearsay; (2) the affidavit fails to specify the source of the informants' knowledge; (3) the information is not corroborated; (4) the informants' criminal histories render their statements unreliable; (5) the informants may have been threatened or induced into giving these statements; and (6) the information is stale. The court rejects the argument.

 Again, the court is not to invalidate an affidavit submitted in support of a Title III authorization with a hypertechnical nit-picking of the affidavit. *See Wilson*, 169 F.3d at 422–23. The court must evaluate the totality of the information found in the affidavit, and make a practical common-sense determination as to whether probable cause exists, including consideration of the veracity and bases of knowledge of persons supplying hearsay information. *Id.* Hearsay is often found in such affidavits, and its reliability is just one of the circumstances that the court must consider. *Id.* There is no reason to invalidate an affidavit containing hearsay when the hearsay information is accompanied by other indicia of reliability. *See id.*

In this case, Agent McNamara's affidavit does contain hearsay statements from the named and confidential informants. Nevertheless, the affidavit also contains other indicia of reliability for the hearsay statements. For example, the named and confidential informants provided details of their background and involvement in organized crime in Chicago, as well as objectively verifiable facts about such organized crime, lending credibility to their statements. *Cf. United States v. Pless*, 982 F.2d 1118, 1124–25 (7th Cir.1992) (noting that an informant demonstrating knowledge of intimate details of a drug operation lent the informant credibility). The

affidavit also contains statements from Agent McNamara that the confidential informants have provided reliable information in the past, some of them for a number of years, and that such information has been used in other cases and to support other determinations of probable cause. *See Quintanilla*, 218 F.3d at 677 (discussing a confidential source that had given reliable information in the past); *United States v. Navarro*, 90 F.3d 1245, 1253 & n. 3 (7th Cir.1996) (discussing named and confidential sources); *compare United States v. Reddrick*, 90 F.3d 1276, 1280–81 (7th Cir.1996) (discussing a confidential source whose information was not corroborated). The information from the named and confidential sources is also cross-corroborative, in that the information paints generally similar pictures of certain Defendants, and other persons purported to be involved in organized crime. Further indicating reliability is the pen register information and telephone records, which support the inference that Basinski and Hanhardt communicated with each other via telephone, as related by the informants. The pen registers and telephone records also support an inference that Hanhardt communicated with other organized crime figures and persons in the Chicago Police Department, also as related by the informants. These facts indicate that the named and confidential sources submitted credible information. The court finds the information submitted by the named and confident informants to be reasonably reliable enough to demonstrate probable cause.

Defendants also attack the source of the confidential informants' knowledge, but that is without merit. The affidavit explains that the confidential informants base their statements on their experiences and activities in organized crime, including personal observations, which is sufficient to establish probable cause. That the in-

formants also submit hearsay on such matters is not unusual. As discussed above, the hearsay is accompanied by many facts indicating its reliability.

 Next, Defendants assert that the affidavit lacks information about the named and confidential informants, such as their full criminal histories and whether they were threatened or induced into supplying the information. Defendants assert that such information is "the stuff of which impeachment is made" and that its omission was to prejudice Defendants in the eyes of Chief Judge Aspen. (*See* Hanhardt's Mot. to Suppress, pg. 12); *cf. United States v. Williams*, 737 F.2d 594, 604 & n. 6 (7th Cir.1984) (noting that an omission of material fact may be the basis for a *Franks* hearing). But contrary to Defendants' argument, "[t]he law does not require an officer swearing out an affidavit for a warrant to include all possible impeachment material." *United States v. Young*, 877 F.2d 1099, 1103 (1st Cir.1989). The affidavit "need only explain that the officer has found the informant to be reasonably reliable." *Id.* That is what happened here. Agent McNamara explained that each of the named and confidential informants had provided information in the past, and that the informants had a history of providing reliable information. *Cf. Quintanilla*, 218 F.3d at 677 (discussing informant's history of reliable information); *Navarro*, 90 F.3d at 1253 & n. 3 (same). The informants' statements also cross-corroborated each other by providing similar information on organized crime figures and the related activities of certain Defendants. And, Agent McNamara verified certain information, such as the use of a telephone calling card and the dates of jewelry trade shows, which further demonstrates the reliability of the information. In short, the omission of all information that could form the basis of impeachment at trial does not affect the probable cause determination in this case.

 Defendants also argue that the information is stale, rendering it irrelevant to a probable cause determination. Age of information contained in an affidavit is one factor that the court should consider in making a probable cause determination. *See Spry*, 190 F.3d at 836; *Pless*, 982 F.2d at 1125–26; *United States v. McNeese*, 901 F.2d 585, 596–97 (7th Cir.1990), *overruled on other grounds as recognized by United States v. Westmoreland*, 240 F.3d 618 (7th Cir.2001). If the information in the affidavit is old, probable cause is less likely to be found. *McNeese*, 901 F.2d at 596–97. But, if the information concerns criminal activity that is protracted or ongoing, then the age of the information diminishes in significance. *Id.*, at 597; *see also Pless*, 982 F.2d at 1126 ("Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity."). And, if there are other indicia of reliability, then the age of the information is less of a factor. *McNeese*, 901 F.2d at 596–97; *see also Spry*, 190 F.3d at 836 (citing *Pless*, 982 F.2d at 1125–26, and noting that the court should not hesitate to issue a warrant when there are other factors supporting reliability). Defendants assert that some information dates back to the 1950's, 60's, and 70's, and that such information cannot be relevant to a Title III intercept authorization in 1996. The court does not agree.

 That some of the information contained in the affidavit concerns events many years prior to the Title III application does not deprive the entire affidavit of probable cause. *See Spry*, 190 F.3d at 836; *Pless*, 982 F.2d at 1125–26; *McNeese*, 901 F.2d at 596–97. Much of the dated information provides historical context for the current information, and none of it contradicts the current information. And, some of the information concerns a long running jewelry theft conspiracy, making

the passage of time less significant. *See Spry*, 190 F.3d at 836; *Pless*, 982 F.2d at 1125–26; *McNeese*, 901 F.2d at 596–97. Thus, the court rejects the notion that the purported staleness of some of the information renders the entire affidavit without probable cause.

### c. Franks hearing:

▇▇▇▇▇ Alternatively, Defendants assert that they are entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and its progeny. In *Franks*, the Supreme Court ruled that the Fourth Amendment sometimes requires an evidentiary hearing into allegations that an affidavit submitted in support of a warrant contains false statements. *See United States v. Whitley*, 249 F.3d 614, 620 (7th Cir.2001); *United States v. Jones*, 208 F.3d 603, 607 (7th Cir.2000); *United States v. Roth*, 201 F.3d 888, 892 (7th Cir.2000); *United States v. Walker*, 25 F.3d 540, 544 (7th Cir.1994). Affidavits submitted in support of a warrant are presumed valid. *Jones*, 208 F.3d at 607. Thus, to obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the false statement [was] necessary to the finding of probable cause." *Id.* (emphasis omitted, citing *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674); *see also Whitley*, 249 F.3d at 620 ("The Fourth Amendment requires the trial court to conduct an evidentiary hearing upon a defendant's preliminary showing that: (1) the warrant affidavit contained false information; (2) the false information was included in the affidavit intentionally or with reckless disregard for the truth; and (3) that the misrepresentations were necessary to the determination of probable cause to issue the warrant."). The substantial showing necessary to obtain a

*Franks* hearing must focus on the state of mind of the affiant, in this case, Agent McNamara. *Jones*, 208 F.3d at 608. Allegations that an informant may have provided false information are irrelevant to determining whether a *Franks* hearing is required. *Id.* "[T]he fact that a third party lied to affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation." *Id.* "A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *Id.* Deliberate or reckless falsity demands a showing that the "affiant lied or that the ... affiant recklessly disregarded the truth because he 'in fact entertained serious doubts as to the truth of his allegations,' or had 'obvious reasons to doubt the veracity of the allegations.'" *Id.* quoting *Williams*, 737 F.2d at 602 (in turn quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). The defendant must present evidence of all necessary elements, rather than conclusions or suppositions. *See Franks*, 438 U.S. at 170–72, 98 S.Ct. 2674.

Here, Defendants argue: (1) that Agent McNamara related certain inaccurate information; (2) they believe the informants were lying or provided incorrect information; (3) that Agent McNamara omitted facts that would have demonstrated innocent explanations for certain facts presented in the affidavit; and (4) Agent McNamara omitted the informants' full criminal histories, and failed to disclose any threats or inducements made to the informants. Defendants arguments do not warrant a *Franks* hearing.

Defendants' first two points are easily dispatched. First, the incorrect information from Agent McNamara of which Defendants complain is that Agent McNamara incorrectly stated the names of persons that own two businesses alleged-

ly associated with organized crime. There is no evidence that Agent McNamara provided this incorrect information deliberately or recklessly. Moreover, this type of inaccuracy is in no way material to the probable cause determination. This is hardly the substantial showing necessary for a *Franks* hearing. *See Jones,* 208 F.3d at 607; *Roth,* 201 F.3d at 892; *Walker,* 25 F.3d at 544.

Defendants' second point is similarly without merit. That informants may have provided inaccurate information does not entitle one to *Franks* hearing. *Jones,* 208 F.3d at 608. Defendants' burden is to present substantial evidence of deliberate or reckless falsity on the part of *Agent McNamara,* not the informants. *Id.* Defendants allege that: (1) certain alleged misconduct by Hanhardt, as related by CI-3 and CI-4 is not accurate; (2) CI-3's statement that Hanhardt was associated with a certain organized crime figure was inaccurate because Hanhardt actually assisted in convicting that person; and (3) the location of a jewelry theft, as related by CI-2 was wrong. Defendants assert that Agent McNamara deliberately or recklessly failed to verify these facts. These allegations do not involve statements of Agent McNamara, and do not entitle Defendants to a *Franks* hearing. *Jones,* 208 F.3d at 608. Moreover, even assuming the statements of the CI's are inaccurate, there is no showing of the materiality of these statements to the probable cause inquiry. These statements provide historical background and context to the affidavit, and the slight inaccuracies of which Defendants complain do not undermine the totality of probable cause found in Agent McNamara's affidavit.

Defendants' third and fourth points require additional discussion. The primary argument here is that Agent McNamara's omission of exculpatory facts and full criminal histories of the named and confidential informants, as well as non-disclosure of any threats or inducements that the Government may have made to the informants undermines the determination of probable cause. Defendants assert that a *Franks* hearing is necessary to develop a full record on these points.

Defendants correctly assert that in certain circumstances an affiant's deliberate or reckless omission of material fact may require a *Franks* hearing. *See Williams,* 737 F.2d at 604 & n. 6; *see also United States v. Wells,* 223 F.3d 835, 838 (8th Cir.2000) (noting that a *Franks* hearing is required if the defendant shows that facts were omitted with intent to make an affidavit misleading, or with reckless disregard for whether the omission makes the affidavit misleading); *United States v. Grant,* 218 F.3d 72, 77 (1st Cir.2000) (technically accurate statements that have been rendered misleading because of omissions of material fact may be the subject of a *Franks* hearing), *cert. denied,* 531 U.S. 1025, 121 S.Ct. 596, 148 L.Ed.2d 509 (2000); *cf. United States v. Swanson,* 210 F.3d 788, 790–91 (7th Cir.2000) (discussing the omission of a non-material fact, and finding no *Franks* hearing required), *cert. denied,* 531 U.S. 899, 121 S.Ct. 234, 148 L.Ed.2d 167 (2000). Defendants argue that Agent McNamara intended to mislead the court by omitting exculpatory facts and facts going towards credibility of the informants. Defendants also argue that certain facts that could provide innocent explanations for negative inferences should have been included in the affidavit. The court addresses each of these points in turn.

The court first addresses the omission of purportedly exculpatory facts. Defendants point to numerous commendations that Hanhardt received for his work as a police officer, as well as his arresting high profile criminals. Defendants, however, fail to present any evidence that

Agent McNamara deliberately or recklessly failed to include such information with the purpose of misleading the court. *See Wells,* 223 F.3d at 838 (the defendant has the burden of demonstrating deliberate or reckless omission of material fact); *Grant,* 218 F.3d at 77 (same); *Swanson,* 210 F.3d at 790–91 (same); *Williams,* 737 F.2d at 604 & n. 6 (same); *cf. United States v. Tisdale,* 248 F.3d 964, 974 (10th Cir.2001) (inadvertent omissions are not a basis for a *Franks* hearing). And it would be difficult to do so. Evidence that Hanhardt carried out his duties as a police officer has very little, if any, impact on evidence that he may have also been involved in criminal activity. *Cf. United States v. Hill,* 40 F.3d 164, 168 (7th Cir.1994) (discussing Federal Rule of Evidence 404(b) and noting that the rule does not allow introduction of evidence of good acts to prove action in conformity therewith). The omission of such irrelevant material cannot be considered deliberately or recklessly misleading the court.

■ Next, Defendants assert that there are innocent explanations for phone calls being made between the targeted phone number and numbers assigned to persons associated with organized crime, and that Agent McNamara attempted to mislead the court with their omission. Similar to the "exculpatory evidence" discussed above, Agent McNamara did not omit any material facts by leaving "innocent explanation" facts out of the affidavit. *See Williams,* 737 F.2d at 604 & n. 6 (noting that an omission must be material before a *Franks* hearing is necessary); *cf. Hill,* 40 F.3d at 168. And, Defendants present no evidence from which the court could infer that Agent McNamara's omission of innocent explanation facts was deliberate or reckless. Defendants argue that Agent McNamara could have done more to learn the innocent explanation facts, but that is not relevant to a *Franks* inquiry. Moreover, Agent McNamara did not have a duty to uncover all possible innocent explanations of the facts he submitted in his affidavit. *See e.g. United States v. Cancelmo,* 64 F.3d 804, 808 (2nd Cir.1995) (noting that an innocent explanation consistent with the facts in an affidavit does not necessarily negate probable cause); *United States v. Malin,* 908 F.2d 163, 166 (7th Cir.1990) (same), *abrogated on other grounds as recognized by United States v. Monroe,* 73 F.3d 129 (7th Cir. 1995). The fact that there may have been an innocent explanation for some of the calls between the targeted phone number and phone numbers assigned to persons engaged in organized crime does not materially detract from the totality of probable cause found in the affidavit, particularly where there are numerous other calls for which Defendants offer no innocent explanation. Thus, the court finds that Agent McNamara's omission of facts that may provide an innocent explanation for some of the affidavit's negative inferences is not a basis for a *Franks* hearing.

■ Defendants' next argument that Agent McNamara attempted to mislead the court by omitting the full criminal histories of the named and confidential informants. The existence of facts that may tend to impeach an informant is not required to be included in an affidavit. *See Young,* 877 F.2d at 1103 (noting that the law does not require an affidavit to provide all possible impeachment material). Indeed, the desire for an evidentiary hearing "must be supported by more than a mere desire to cross-examine." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674. Agent McNamara disclosed enough of the criminal histories of the named and confidential informants to give sufficient insight into their backgrounds for the court to weigh the reliability of their information. Agent McNamara disclosed the fact of past criminality by certain informants and described

at least some of their criminal activities. Other informants are associated with persons in organized crime, or are involved in organized crime themselves. These confidential informants face danger should their identity be revealed. This is not a case where the Government, by either affirmative statement or by omission, has misled the court about the informants' backgrounds. The affidavit portrays the informants as persons involved in, or associated with, organized crime, and it is plain that they are some unsavory characters. The court does not construe the omission of the informants' full criminal histories as a deliberate or reckless attempt to mislead the court into believing the informants are merely angels with dirty faces. There is no need to hold a *Franks* hearing to present further evidence of criminality on the part of the informants.

■ Finally, the court addresses the purported omission of any threats and/or inducements that the Government may have made to obtain the statements. Again, in order to obtain a *Franks* hearing, Defendants must present evidence making a substantial showing that the affidavit contains false statements or misleading omissions. *Jones,* 208 F.3d at 607; *Roth,* 201 F.3d at 892; *Walker,* 25 F.3d at 544. And again, the basis for a *Franks* hearing must be more than a desire to cross examine an informant. *Franks,* 438 U.S. at 171, 98 S.Ct. 2674. Defendants present nothing to support their allegation that unspecified threats and/or inducements may have been made to the informants. Defendants submit that such threats and/or inducements go to probable cause, but it is actually impeachment evidence going to the bias or prejudice of a witness. That is not a basis for a *Franks* hearing. This contention is without merit.

## C. Necessity:

■ Title III intercepts are an intrusive investigative tool. Thus, the statute requires the intercept application to include a statement concerning other investigative techniques that have been tried and failed, or why other techniques reasonably appear unlikely to succeed, or that other techniques are too dangerous. *See* 18 U.S.C. § 2518(1)(c). This is "to ensure that ... wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Iiland,* 254 F.3d 1264, 1267 (10th Cir.2001) (citing *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974)). Agent McNamara's affidavit included his statements concerning six alternative investigative techniques and how those techniques were inadequate. Defendants argue that Agent McNamara's statements concerning the alternative investigation techniques are insufficient to meet the required showing of necessity, and that other means of investigation were available. The court is not persuaded.

■ The Seventh Circuit has repeatedly held that the burden of satisfying § 2518(1)(c) is not great. *See e.g. United States v. Plescia,* 48 F.3d 1452, 1463 (7th Cir.1995); *United States v. Thompson,* 944 F.2d 1331, 1339–40 (7th Cir.1991); *United States v. Farmer,* 924 F.2d 647, 652 (7th Cir.1991); *United States v. Zambrana,* 841 F.2d 1320, 1329 (7th Cir.1988). The statutory requirements of necessity are worded in the disjunctive, so that the Government need only show that other techniques have failed, or that other techniques reasonably appear unlikely to succeed, or that other techniques are too dangerous. *See* 18 U.S.C. § 2518(1)(c); *see also Thompson,* 944 F.2d at 1339–40 (analyzing the necessity requirement); *Lamantia,* 1996 WL 559950 at *17 (same). The court is to

exercise its discretion and make this determination in a "practical and commonsense fashion." *Plescia,* 48 F.3d at 1463; *see also Thompson,* 944 F.2d at 1339–40 (noting that the decision is left to the discretion of the court); *Zambrana,* 841 F.2d at 1329 (same). A finding of necessity is proper where the affidavit states a factual predicate for the conclusion that normal investigative techniques are unlikely to be successful. *See Zambrana,* 841 F.2d at 1329; *see also Plescia,* 48 F.3d at 1463 (rejecting an argument that intercept evidence was unnecessary).

In this case, Agent McNamara's affidavit more than satisfies the requirements of § 2518(1)(c). The affidavit outlined the following alternative investigative techniques: (1) physical surveillance; (2) grand jury investigation; (3) use of confidential informants; (4) use of undercover agents; (5) interviews of the subjects of the intercepts and their associates; and (6) the use of search warrants. Agent McNamara explained that physical surveillance and confidential informants had already been used in the investigation, and that those techniques were not likely to yield more fruitful results. There is only so much that can be gained from physical surveillance, and continued surveillance carries the risk of detection, particularly where certain Defendants are themselves schooled in surveillance techniques. Agent McNamara also explained that grand jury investigations, interviews, and search warrants were unlikely to be successful because of the closed nature of the alleged criminal conspiracy. Persons engaged in organized crime activities are not likely to respond positively to overt investigatory methods. Undercover operations are always risky, and take a great deal of time to develop, especially where the ring of persons that must be infiltrated are suspicious of outsiders. In addition, Agent McNamara explained that each of these six techniques imposes significant risks to Government agents, informants and the investigation itself. The affidavit presented more than adequate statements of fact to support the finding of necessity.

Defendants contend that there were numerous other investigative techniques, such as additional pen registers, physical surveillance, and monitoring of police databases that the Government should have employed before seeking the Title III intercept. That argument reads too much into § 2518(1)(c). As discussed above, there is no requirement that the Government exhaust every single available investigatory option available prior to obtaining the Title III authorization, or limit itself to less intrusive techniques. *See Plescia,* 48 F.3d at 1463 (finding § 2518(1)(c) satisfied, and noting that physical surveillance alone would have made the investigation far more difficult or impossible); *United States v. Smith,* 31 F.3d 1294, 1297–98 (4th Cir.1994) (noting that § 2518(1)(c) does not require the Government to exhaust all possible alternatives to wiretapping); *Thompson,* 944 F.2d at 1339–40 (section 2518(1)(c) merely ensures that wiretapping is not the first investigatory tool used). Defendants are engaging in "monday morning quarterbacking" of the Government's fact based statements of necessity for the Title III intercepts. That type of inquiry is not the "practical and commonsense" determination that the court is required to perform. *See Plescia,* 48 F.3d at 1463.

### D. Subsequent extensions and authorizations:

After the initial January 2, 1996 authorization on Hanhardt's home phone, the Government sought and obtained eleven extensions of that order. Defendants argue that each extension is invalid because, in their view, the initial affidavit authorization did not present probable cause, and

that all the extension orders are similarly lacking probable cause. The court rejects this argument. As discussed extensively above (*see* supra pp. 5–23), Agent McNamara's January 2, 1996 affidavit provided an ample basis for finding probable cause.

■ Defendants also claim that the eleven extensions were invalid because the Government failed to demonstrate the necessity of the authorizations. Defendants again argue that the Government had other less intrusive means available to carry out the investigation. The court has already rejected this argument (*see* supra pp. 23–26), and the same analysis applies here. The extensions are presumed valid, and it is Defendants' burden to present evidence demonstrating that their invalidity. Failing to do so, the court rejects Defendants' argument.

After the initial January 2, 1996 authorization, the Government also sought and obtained Title III intercepts on Basinski's skypager, Basinski's Arizona home phone, Basinski's cellular phone, Basinski's Chicago home phone, a cellular phone number assigned to another person, and the home phone of one of Hanhardt's family members.[8] Defendants seek to suppress evidence obtained from these intercepts, and present the same arguments concerning probable cause and necessity. Defendants argue that these authorizations are all based on information derived from Agent McNamara's January 2, 1996 affidavit, and therefore suffer from a lack of probable cause. For the reasons already explained, the court rejects this argument. (*See* supra pp. 5–23.)

Defendants also present the same arguments concerning necessity of these intercept orders. Defendants do not point to any specific deficiencies in the later affidavits concerning the necessity for these intercept orders. Instead, Defendants again argue that the Government's showing was inadequate and that there were other available means of investigation, such as pen registers, physical surveillance, and monitoring of police databases. For the reasons discussed above, the court again rejects this argument. (*See* supra pp. 23–26.)

One issue deserves further attention. Concerning an extension issued on May 30, 1996, Basinski and the Government argue over what they describe as an "incident" that occurred in April of 1996, where the Government photographed a jewelry salesman's car as it was parked in front of his home. Basinski asserts that government agents are lying because they could only have learned about the existence and location of salesman and his car through surveillance, which the Government denies having performed. The Government counters that it deduced the location of the car from information obtained through intercepted conversations. The bottom line, as argued by Basinski, is that the incident demonstrates that alternative methods, such as surveillance, would have accomplished the same goal of the investigation, and therefore, the intercepts were unnecessary. For the reasons outlined above (*see* supra pp. 23–26), the court rejects this argument. *See Plescia,* 48 F.3d at 1463; *Smith,* 31 F.3d at 1297–98; *Thompson,* 944 F.2d at 1339–40.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to suppress Title III intercepts are denied.

IT IS SO ORDERED.

---

**8.** The Government also sought and obtained extensions of some of these orders.