[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
On December 27, 1996, two days after Christmas, the Plainville Fire Department received a phone call at 9:59 P.M. from a woman who claimed she was a waitress at a restaurant in Farmington. She reported that while serving drinks she heard the defendant talk about a house on Broad Street he was going to be CT Page 9778 "torching" between midnight and 2:00 A.M.
The defendant had also talked about it the night before according to the anonymous female caller. The defendant also stated, "He put up a Christmas tree with some papers underneath it and a heater next to it." She also identified the house to be torched as a small, rundown, single family on Broad Street. Officer Laurie also testified that he lived three doors away from the defendant and that when he heard the description of the house on Broad Street he became suspicious of the defendant. It was further testified that Broad Street is lengthy with more than 100 houses on it and that defendant's house was well known as being rundown.
When officers made initial entry into defendant's house then found the Christmas tree with a timer.
Nothing was removed at that time from defendant's home and a search warrant was obtained by police officers at approximately 7:00 A.M. on December 28, 1996. Prior to the initial entry no inquiry was made as to the source of the information that had been called in.
Defendant seeks to suppress for use as evidence at the time of trial the following:
1. Free Standing Halogen Lamp
2. One "Intermatic" Electrical Timer
3. Section of colored rope
4. Three Christmas Stockings filled with paper
5. Fifteen Paper Plates
6. Metal Christmas Tree Stand
The aforementioned items were all seized pursuant to the search warrant obtained subsequent to the initial entry.
Findings
In the present case the State was required to act swiftly particularly since the called stated the arson would be committed CT Page 9779 as soon as midnight, some two hours after the information had been received. There is serious doubt that the State could have obtained a search and seizure warrant within this limited time frame.
To determine whether there is an emergency sufficient to justify a warrantless search the test is "whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." United States v. Wilson,36 F.3d 205, 208 (1 Cir. 1994).
The three general categories which the court has identified as emergency situations are (1) danger to human life (2) destruction of evidence, and (3) flight of a suspect, State v.Guertin, 190 Conn. 440, 448. In the present case the first emergency situation is the most compelling and obviously relevant. This emergency situation could logically be extended to a serious loss of property that would cause someone serious financial loss. The destruction of evidence because of this threatened nefarious act is also apparent. It should be kept in mind that the standard regulating warrantless searches pursuant to the emergency doctrine is reasonableness, State v. Blades,225 Conn. 609, 622. Clearly, in the present case officers had an objectively reasonable belief that life or property could be lost unless they acted immediately. The officers were not acting pursuant to a full investigatory function but from the function designed to save property and human life. The emergency exception does not arise necessarily from a police function, but from the community care taking function. Note, "The Emergency Doctrine, Civil Search and Seizure, and the Fourth Amendment," 43 Fordham L. Rev. 571, 577 (1975).
It is the finding of this court that the officer's knowledge prior to the initial entry created an exigent circumstance. The time that would be needed to secure a search warrant would impair the officers' ability to protect against serious property loss or a potential loss of life. The entry was clearly justified.
In addition thereto, the entry was made due to an emergency situation the purpose of which was to prevent a serious fire from occurring. The United States Supreme Court has long recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe there is a need to protect or preserve life or avoid serious injury. Mincey v. Arizona, 437 U.S. 385. CT Page 9780
There was an entry but nothing was removed from the premises. There is no claim that officers rummaged through drawers or looked in closets or that the entry was pretextual. The officers went in, disconnected the timer and left. They went right to the Christmas tree and determined the information that had been received was one-hundred percent correct. Had they not acted swiftly they would probably have been defending a civil lawsuit instead of defending a claim of illegal entry.
It is the business of policemen and firemen to act, not to meditate or speculate whether the report is correct. A neighborhood could be ravaged and destroyed by fire if fire and police personnel tried to act with the calm deliberation associated with the judicial process. In the present case there is nothing to show that fire and police officers contemplated what to do — they just did it as conscientious public servants. There was evidence that would require prudent and reasonable officers to see a need to act. Wayne v. United States,318 F.2d 205 (D.C. Cir. 1963).
The officers would have been derelict in their duty had they acted otherwise even if it turned out that no emergency existed. The entry was clearly not primarily motivated by intent to arrest and seize evidence but was done solely to prevent a conflagration.
The motion to suppress is denied.
Owens, J.