OPINION
Anthony V. Fuller pled no contest to carrying a concealed weapon after the Montgomery Count Court of Common Pleas overruled his motion to dismiss and his motion to suppress. The court found him guilty and sentenced him to five years of community control sanctions. Fuller appeals from this conviction, raising two assignments of error.
The testimony at the hearing on Fuller's motions revealed the following facts.
On December 8, 2000, at approximately 8:45 in the evening, Officer Anthony Ashley and Officer Michael Vickers were patrolling the area of Guenther Road in Dayton. Officer Ashley testified that he had observed Fuller's vehicle make a left turn from Little Richmond onto Guenther without signaling. Ashley turned on his overhead lights, which caused the camera in the cruiser to activate automatically. Fuller pulled over on Live Oak, off Guenther. Ashley testified that, as he had been exiting the cruiser, he had seen Fuller make a throwing motion as though he were throwing something out the window. He was able to discern the throwing motion despite the fact that Fuller's windows were tinted.
Upon approaching Fuller's vehicle on the driver's side, Ashley observed a small green stick on the ground that he immediately recognized as a stem from a marijuana plant. He then asked Fuller, whose window was partially down, for his identification and registration. At that time, Ashley smelled a strong odor of raw marijuana coming from the vehicle. He then ordered Fuller to step out of the vehicle because he was concerned that Fuller would attempt to destroy the marijuana that Ashley suspected was in the car. Fuller complied and exited the vehicle.
According to Ashley's testimony, he escorted Fuller back to the police cruiser, where he informed Fuller that he would be conducting a pat down search prior to placing Fuller in the cruiser. He testified that he had placed Fuller in the cruiser because he had been concerned about the destruction of evidence. He further testified that it had been standard procedure of the police department to conduct a pat down prior to placing anyone in a cruiser to insure that the person did not have weapons. He stated that this was done for the safety of the officers. As Ashley began to conduct the pat down, Fuller volunteered that he had a handgun in his pocket. Ashley recovered the gun, which was loaded, and also found a sealed baggy of marijuana on Fuller's person. Fuller was arrested for carrying a concealed weapon and placed in the back of the cruiser. Fuller's vehicle was also searched, but no contraband was found.
Ashley testified that, once Fuller had been secured in the back of the cruiser, he and Vickers had viewed the videotape of the incident and had decided not to keep it because "it didn't clearly depict the tossing motion that [he] had observed." This action was pursuant to the policy of the Trotwood Police Department. Each cruiser had two tapes-one for odd numbered days and one for even numbered days. Therefore, tapes were reused every other day unless, at the discretion of the officers, the tape was saved because it contained something that could be relevant to a court proceeding. Thus, Ashley and Vickers decided not to preserve the tape because it was not relevant for a court proceeding in that it did not clearly depict the throwing motion.
Officer Vickers testified that he had been looking down and therefore had not seen Fuller fail to signal. He also testified that he had not seen the throwing motion because he had been on the passenger side and the windows had been tinted. When asked if he had smelled marijuana when he had been at the vehicle, he answered, "No, not at that time," and the issue was not revisited during his testimony. Vickers also testified that he and Ashley had viewed the tape and that they had decided not to preserve it because "it did not show a throwing motion from where the camera was at."
Fuller testified that he had used his signal when he turned and that he had not tossed anything out of the window. He also testified that the pat down had occurred at the driver's side of his vehicle, rather than the cruiser. He admitted to having had the concealed weapon and marijuana on his person and stated that he had told Officer Ashley about the gun.
Fuller was indicted for one count of carrying a concealed weapon in violation of R.C. 2923.12(A). He filed a motion to suppress the evidence on May 31, 2001, arguing that the officers did not have a reasonable basis to conduct a pat down. On June 28, 2001, he filed a motion to dismiss the indictment, arguing that the state had destroyed materially exculpatory evidence and that it had acted in bad faith. A hearing was held on both motions on June 29, 2001, at which Ashley, Vickers, and Fuller testified. At the hearing, the trial court orally overruled both motions. Fuller pled no contest on July 5, 2001. The trial court found him guilty and on August 7, 2001 sentenced him to five years of community control sanctions.
Fuller raises two assignments of error on appeal.
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO DISMISS.
Under this assignment of error, Fuller argues that his due process rights were violated by the state's failure to preserve exculpatory evidence.
The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. See Arizona v. Youngblood
(1988), 488 U.S. 51, 57-58, 109 S.Ct. 333, 337; State v. Benton (2000),136 Ohio App.3d 801, 805; State v. Lewis (1990), 70 Ohio App.3d 624,633-34. To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v.Trombetta (1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 2534. Furthermore,
 In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense.
 State v. Johnston (1988), 39 Ohio St.3d 48, paragraph five of the syllabus.
Fuller cites two cases that placed the burden on the state to show that the destroyed evidence was not exculpatory. See Benton, supra, at 805-06; Columbus v. Forest (1987), 36 Ohio App.3d 169, 173. However, in both cases, the court placed the burden on the state because the state had destroyed evidence following a request by the defendant that the evidence be preserved. Here, there was no such request. Therefore,Benton and Forest do not apply, and we will not extend their reasoning to place the burden on the state in the case before us, where evidence was destroyed before any request for it was made and pursuant to the normal procedures of the police department.
In this case, the trial court found that the videotape would be exculpatory, if at all, only with respect to charges brought relating to the marijuana. No such charges were brought. Fuller argues that the evidence is materially exculpatory because it calls Officer Ashley's credibility in general into question. Thus, a different result would have been obtained had the trial court viewed the videotape and determined that Ashley was not credible on any issue, including his testimony regarding the traffic violation that prompted the stop and the smell of marijuana. Furthermore, Fuller argues that the videotape is of such a nature that he cannot obtain comparable evidence. In the event that we find that the evidence was not materially exculpatory, but merely potentially useful, Fuller argues that the officers acted in bad faith.
We disagree with Fuller and find that the evidence was not materially exculpatory. While the videotape may have been helpful to Fuller in impeaching Ashley's credibility, it did not directly exculpate him for the crime for which he was charged. See State v. Fitzpatrick (Mar. 7, 1997), Montgomery App. No. 16008, unreported. Rather, at best, the evidence would have caused the trial court to question Ashley's credibility with regard to his testimony that he smelled marijuana and with regard to the alleged turn signal violation that justified the stop. Furthermore, looking to the second prong of the definition, the evidence was available to Fuller by other means. Both Ashley and Vickers testified that the videotape did not depict the throwing motion. Therefore, the fact that the videotape did not corroborate Ashley's testimony was before the trial judge.
We therefore conclude that the videotape was not materially exculpatory but was merely potentially useful. No due process violation arises from the destruction of potentially useful evidence unless such evidence is destroyed in bad faith. See Youngblood, supra, at 57-58; Benton, supra, at 805; Lewis, supra, at 633-34.
 The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."
 State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145, unreported (citations omitted). Fuller has not established bad faith under this definition. There is no evidence that the officers had an intent to mislead in destroying the videotape. To the contrary, they candidly testified that the contents of the videotape did not corroborate their story. Thus, the evidence does not establish that they acted in bad faith.
Nonetheless, in our view, the officers acted with bad judgment in destroying the tape. We seriously question the propriety of a policy that allows officers to destroy tapes that do not corroborate their version of events, whatever the purpose of the destruction. Such action approaches the outer limits of bad faith even if it does not reach it and tends to undermine public confidence in the police. We have stated previously that we do not condone the destruction of videotapes that record events leading to an arrest:
 Police cruisers are equipped with videotape cameras in order to make a record of those events for any later prosecution. On that basis, and pursuant to Crim.R. 16, they are available for use by an accused as they are for use by the State in such proceedings. The need for care in preserving that record is implied by the force of the Rule.
 State v. Zawacki (July 11, 1997), Montgomery App. No. 16177, unreported. We will continue to look critically at actions of police officers in destroying evidence that does not corroborate their story. In this case, however, that critical inquiry leads us to conclude that Fuller presented no evidence that the officers acted in bad faith other than their testimony, and their testimony does not demonstrate that they acted in bad faith. Thus, we find that the trial court did not err in overruling Fuller's motion to dismiss.
The first assignment of error is overruled.
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS.
Under this assignment of error, Fuller argues that the pat down search of his person prior to placing him in the police cruiser was unconstitutional and that the gun should therefore have been suppressed. Neither party seems to argue that the officers were not justified in patting Fuller down for weapons before placing him in the police cruiser. Rather, the argument centers on whether the officers were justified in placing Fuller in the cruiser at all. The state attempts to justify the officers' actions under two different theories, the officers' safety and exigent circumstances.
The supreme court has articulated the circumstances in which it is reasonable for an officer to place a driver in a patrol car during a routine traffic stop:
 During a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition. During a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer.
 State v. Lozada (2001), 92 Ohio St.3d 74, paragraphs one and two of the syllabus.
The state does not rely heavily on the argument that the officers had reason to believe they were in danger. Neither officer testified that they had placed Fuller in the cruiser to prevent either themselves or Fuller from being subjected to a dangerous condition. Although Officer Ashley testified that they patted people down prior to placing them in the cruiser for their safety, neither officer ever stated that they had feared for their safety at any time in dealing with Fuller. In fact, Ashley specifically stated that he had had no reason to believe that Fuller had a weapon. Ashley testified that he had placed Fuller in the cruiser because he was concerned that Fuller would destroy drugs in the car. However, the danger of destruction of drugs in the car was eliminated by the removal of Fuller from the car, and there was no reason to place him in the cruiser to prevent the destruction of drugs. Therefore, we do not believe that the officers were justified in placing Fuller in the cruiser under Lozada, and the pat down cannot be justified under this theory.
The state's second argument is that exigent circumstances justified placing Fuller in the cruiser and patting him down. This argument is premised upon the proposition that Officer Ashley had probable cause to believe that Fuller possessed marijuana and that exigent circumstances existed which justified a warrantless search. Thus, the argument goes, if Officer Ashley had probable cause to conduct a search of Fuller's person, and exigent circumstances excused the warrant requirement, there was no constitutional mischief in subjecting Fuller to a pat down search.
Initially, we note that the trial court did not decide this issue. However, in reviewing determinations of probable cause and reasonable suspicion, we review the trial court's determination of the facts for clear error but review the legal conclusions de novo. See Ornelas v.United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663. In this case, the trial court accepted the testimony of Officer Ashley regarding the turn signal violation, Fuller's throwing the stem out of the car, and the smell of marijuana. We accept these factual determinations.
Under State v. Moore (2000), 90 Ohio St.3d 47, 49-51, the smell of marijuana alone by an experienced officer is sufficient to establish probable cause to conduct a reasonable search. However, there must still be an exception to the warrant requirement to justify the search. Seeid. at 51. As in Moore, the pat down search in this case cannot be justified by the officers' fear for their safety, as they did not testify that they feared for their safety. The state argues that the warrantless search in this case, i.e. the pat down search, was justified by exigent circumstances. To justify a search due to exigent circumstances, there must be "compelling reasons" or "exceptional circumstances." Id. at 52. Thus, "[a] warrantless search is * * * justified if there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." Id. Many courts have held that a warrantless search may be justified to preserve evidence of drugs because they are so easily destroyed or hidden. See id., citing United States v. Wilson
(C.A.1, 1994), 36 F.3d 205; United States v. Fields (C.A.2, 1997),113 F.3d 313; United States v. Grissett (C.A.4, 1991), 925 F.2d 776;United States v. Gaitan-Acevedo (C.A.6, 1998), 148 F.3d 577; UnitedStates v. Parris (C.A.8, 1994), 17 F.3d 227.
In Moore, a warrantless search of the defendant's person was justified where the officer smelled marijuana and was alone such that he would have had to allow the defendant to leave the scene in the defendant's vehicle in order to obtain a warrant. Id. at 52-53. In the case sub judice, Officer Ashley was accompanied by Officer Vickers. The state argues that, because Vickers was a trainee, Ashley was essentially alone since it would have been negligent to leave Fuller with a trainee. We are not convinced that Vickers was as useless as the state would have us believe. For example, the state has failed to explain why Ashley could not have stayed with Fuller while Vickers went to get a warrant. However, we find that exigent circumstances did exist in this case. Even if Ashley or Vickers had gone to get a warrant, they would have had to detain Fuller outside for some time. They could not let him return to his own vehicle because they were concerned that he might destroy evidence. Based upon the throwing motion that Ashley had observed and the smell of marijuana emanating from the car, this was a reasonable concern. Furthermore, the policy of the police department prevented them from placing Fuller in the cruiser without patting him down due to safety concerns. Therefore, Fuller and whichever officer remained with him would have been forced to remain outside at 8:45 in the evening in December while the other officer obtained a warrant. Thus, we find that "compelling reasons" existed to justify a search pursuant to the exigent circumstances exception to the warrant requirement. As such, the pat down search was also permissible.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.